BYRNE and another vs. THE STATE.

The objection that one of the grand jurors who found an indictment, was an alien, cannot be taken advantage of after a plea to the merits, although the disqualification was not known to the defendant until after such plea was filed.

The words "any person not having all the qualifications of an elector," as used in sec. 42, chap. 169, R. S., 1858, mean any person *disqualified, incapacitated* or *disentitled* to vote, from any of the causes fixed by law, and refer to the condition of the person at the time his vote is received.

It is not necessary, in an indictment against inspectors of an election, under the above section, to aver that the person from whom the vote was received, did not take the oath prescribed by sec. 36 of chap 7.

A count in an indictment charging that the inspectors of an election did knowingly receive, and sanction the reception of, an illegal vote, is not objectionable for duplicity. Where a statute makes either of two or more distinct acts connected with the same general offense, and subject to the same measure and kind of punishment, indictable separately and as distinct crimes, when committed by different persons or at different times, they may, when committed by the same person at the same time, be coupled in one count as constituting one offense.

Whether a person offering to vote has a wager depending upon the result of the election, is a mixed question of law and fact, in passing upon which the inspectors act in a *quasi* judicial capacity, and if they discharge that duty in good faith to the best of their ability, they are not criminally responsible for an error of judgment or mistake of law.

ERROR to the Circuit Court for *Dane* County.

Indictment against *Byrne* and *Kinney*, as inspectors at a general election in the city of Madison, for knowingly receiving and sanctioning the reception of an illegal vote. The first count charges that the defendants did, as inspectors of said election, unlawfully and knowingly receive, and sanction the reception of, a vote from one Pierce, he not having all the qualifications of an elector at such election, and being then and there disqualified as an elector, for the reason that he had made certain bets and wagers, which were then depending upon the result of said election, the defendants then and there well knowing that the said Pierce had not all the qualifications of an elector at said election, and that he was then and there disqualified as such elector, and that he had bets and wagers depending on the result of said election. The second count was in substance similar to the first; the third count charged that the defendants did, as such inspectors, unlawfully and knowingly receive the vote of one Pierce, he not having all the qualifications of an elector at

such election, the defendants then and there well knowing that the said Pierce had not all the qualifications of an elector at such election. The fourth count is similar to the first, except that it names one of the persons with whom said Pierce had made bets which were depending upon the result of said election.

A motion was made to quash the indictment, for the following reasons: 1. The statute under which the indictment is found, does not create or describe the offenses charged therein. 2. The first, second and fourth counts in the indictment, each charge two separate and distinct offenses. 3. The indictment contains no averment of the criminal intent of said defendants, nor are the offenses alleged with sufficient certainty and particularity. 4. There is no sufficient averment that Pierce lacked any one of the qualifications of an elector; that he bet any thing, or was interested in any bet depending upon the result of the election. 5. The defendants should not have been joined in the indictment. 6. Said indictment is in other respects informal, uncertain and insufficient.

The motion was overruled.

On the trial it was proved, among other things, that Pierce offered his vote to the inspectors before noon of the day of election, and the vote being challenged, he was sworn, and stated that he had made bets and had bets then pending upon the result of the election, for which reason his vote was rejected. About the middle of the afternoon, Pierce again offered his vote, and, under the oath which he had previously taken, stated to the inspectors that he had withdrawn all his bets but one, and that had been made with one C., who had gone out of town, and therefore he could not find him in order to withdraw it. Being asked by the inspectors if he had put up the money upon that bet, he answered that he had not. The defendants were not lawyers; the other inspector, J. G. Knapp, was a lawyer. Several of the witnesses testified that after Pierce stated that there was no money up, Mr. Knapp said, "I don't know why he cannot vote." One witness testified that Mr. Knapp said to the board, "Unless the stakes were up, there is no bet;" that *Kinney* held the

vote in his fingers, and looking to Knapp said, "Shall we June Term, 1860. receive the vote?" and that *Byrne* asked him, "What shall we do with this vote?" and that Knapp replied, "I don't consider that there is a bet unless the stakes are up." This evidence as to the inquiries made by the defendants of Mr. Knapp, concerning the legality of the vote, and as to his reply, was, however, contradicted by other witnesses.

BYRNE et al. v. THE STATE.

The defendants' counsel requested the court to instruct the jury as follows: "1. Unless the jury shall find that Pierce lacked one or more of the qualifications of an elector mentioned in sec. 1, chap. 7, R. S., the defendants must be acquitted. 2. The maxim that ignorance of the law excuseth no man, applies to acts which are voluntary, and not to acts done by a person in an official capacity, which he is required by law to do, and in doing which he is to exercise a judgment. In these cases he is innocent, unless he acts from a corrupt motive. 3. A criminal intent is an essential element in every crime, and in determining the question the jury will consider the conduct of the defendants, and what they said and did at the time Pierce applied to vote, and at the time his vote was received." The two first of these instructions the court refused to give, the defendants excepting to the refusal, and gave the third, subject to the qualifications contained in its general charge to the jury, which was as follows: "The statute is, 'If any inspector of elections shall knowingly receive, or sanction the reception of, a vote from any person not having all the qualifications of an elector,' &c. The word "knowingly" used in this statute means guilty knowledge, that is knowing the facts—knowing such facts as make the elector disqualified. It does not mean knowing the law; for in this offense, as in all others, the defendants are presumed to know the law, and ignorance of the law, even if proved, would be no excuse. If you find that the defendants received the vote, knowing the facts which disqualified the elector, it makes no difference whether they knew the law or not; they are guilty. And if they did the act knowingly (in the language of the statute, and in the sense which I have defined), no other intent need be shown to complete the offense. The intent with which they received the vote

was immaterial. The word "knowingly," as used in the statute, imports a guilty knowledge, and if you find that they did thus knowingly receive the vote, they are guilty. The defendants are presumed to have known what facts constituted such a bet as disqualified the elector. To complete such a bet, it was not necessary that any stakes should be put up. A promise to pay was sufficient." To all of said instruction the defendants excepted. The jury found the defendants guilty. A motion for a new trial was made, upon the grounds that the verdict was contrary to law and to the evidence; that the judge erred in his instructions to the jury; that the indictment was not found and presented by a lawful grand jury; and that the verdict was not found by a lawful jury, in this, that one or more of the members of said jury were not, at the time, citizens of the United States. In support of this motion, the defendants produced the affidavits of one of the grand jurors who found said indictment, and one of the petit jurors who tried said cause, showing that they were not, at the time of the finding of said indictment, and of said trial, citizens of the United States; and filed their own affidavit, showing that they did not know of the disqualification of said grand juror or of said petit juror, until after the verdict of the jury was rendered in this case. The court overruled the motion, and the defendants excepted. A motion in arrest of judgment was also made, for the reasons assigned upon the motion to quash the indictment, which motion was overruled, the defendants excepting, and judgment rendered upon the verdict.

*Samuel Crawford* and *J. P. Atwood*, for plaintiffs in error:

1. The disqualification of the grand juror was available on a motion in arrest of judgment. 6 Wend., 386; 36 Me., 128; 2 N. H., 349; 7 English, 630; 7 Yerger, 271; 12 Tex., 252; 9 id., 65; 11 id., 261; 1 Chitty's Cr. Law, 307; Wharton's Am. Cr. Law, 121–2; 1 Gratt., 556; 2 Hale, 155. 2. The crime defined by the statute under which the indictment was found, is that of receiving, &c., "a vote from any person *not having all the qualifications of an elector.*" The qualifications of an elector are defined in sec. 1, Art. 3 of the constitution. Pierce had them all, even though deprived by statute

of the *right to vote at that election.* 3. The inspectors were <span>June Term,<br>1860.</span> *obliged* to receive Pierce's vote, if at the time of voting he answered satisfactorily all the questions put to him by the <span>BYRNE et al.<br>v.<br>THE STATE.</span> inspectors, and took all the oaths required, particularly that prescribed in sec. 36, ch. 7, R. S., and the indictment is defective in failing to allege that he did not do so. 1 Chitty's Cr. Law, 284; Archbold's Cr. Pl., 64; 1 Starkie's Cr. Law (2 ed.), 219; *State vs. Barker*, 18 Vt., 185; *State vs. Butler*, 17 id., 149; *Com. vs. Thurlow*, 24 Pick., 379; *Crandall vs. The State*, 10 Conn., 339. 4. The 1st, 2d and 4th counts each charge two distinct offenses—the receiving of the vote and the sanctioning of its reception, and are bad for duplicity. The 3d charges both the defendants with *receiving* the vote, whereas only one should have been indicted for receiving and the other for sanctioning. The verdict was general. 5. Inspectors of election act judicially in receiving or rejecting votes, and cannot be held civilly, much less criminally, liable for errors of judgment. In support of 'this position counsel cited 3 Jones, 339; 1 Mod., 184; 2 Doug., 426, 465; 1 Day's Cases, 315; 2 Caines' Cases, 314; 11 John., 83, 114, 150; 15 id., 282; 18 id., 119; 1 Denio, 214, 601; 3 id., 117; 21 Barb., 207; 24 id., 422; 2 McLean, 19; 3 id., 574, and numerous other cases.

*S. U. Pinney,* on the same side, cited in support of the point last mentioned, 1 Term Rep., 653; 41 E. C. L., 280; 66 id., 289; 2 Leigh, 715; 1 Mass., 227; 15 Wend., 277; Bro. Parl. Cas., 49; 2 Bay, 1; *Com. vs. Aglar*, Thacher's Crim. Cases; 9 Met., 268, and numerous other cases.

*J. H. Howe,* attorney general, for the state.

*By the Court,* DIXON, C. J. None of the authorities October 15. cited by the counsel for the plaintiffs in error sustain the position that, where knowledge of the disqualification of any of the grand jurors by whom the indictment was preferred, does not come to the accused until after the trial and verdict, he may then avail himself of such defect by motion in arrest of judgment. Whilst in some of the states it is held that objections like the present, which do not go to the character of the juror, but are strictly legal and technical in their na-

ture, can only be taken by way of challenge and before the indictment is returned and filed (3 Wend., 314; 6 id., 386; 9 Mass., 107), and in others that they may be plead in abatement (1 Grat., 556; 7 Eng., 630; 7 Yerg., 271; 12 Texas, 252), and in others still that they may be shown by motion at the time the defendant is arraigned (4 Greenleaf, 439; 36 Maine, 128), it is agreed in all that they cannot be listened to after a plea to the merits. The delays and inconveniences in the administration of criminal justice which would follow from the adoption of a different rule, would be immense, and the ends of substantial justice would not be in the least promoted by it. There was therefore no error in the ruling upon this point.

In giving a construction to the statute under which the indictment was found, we cannot adopt the distinction made by counsel between the positive and negative qualities of the voter, or those things which under the constitution and laws are said to give, and those which are said to take away from the individual, the elective franchise. We cannot for a moment believe that the legislature, in framing and passing the statute, contemplated or intended to recognize such a distinction. On the contrary it seems to us plain that the word " qualifications " was not used in the limited sense in which it occurs in the constitution, but with reference to its more enlarged meaning when all the laws touching the privilege of the party offering to vote were applied to the facts of the case. Violations of the laws with respect to those things which are necessary to confer, and those which are declared to destroy the privilege where it once existed, are equally within the mischiefs which the act was designed to prevent; and the restriction of its operation to cases of the first class would manifestly defeat the intention of the legislature. The language used, when understood according to its ordinary grammatical signification, is broad enough to cover both. The words " any person not having all the qualifications of an elector " are equivalent in their effect and meaning to the words *any person disqualified, incapacitated or disentitled, from any of the causes fixed by law,* and refer of course to the state or condition of the person at the time his vote is received.

The case made by the testimony is therefore within the provisions of the statute.

It was not necessary to state in the indictment that the person from whom the vote was received did not take the oath prescribed by section 36, of chapter 7 of the Revised Statutes. The rule seems to be universal that where the exception is in a separate section of the statute, or in a proviso which is distinct from the enacting clause, it then becomes a matter of defense which the prosecution need not anticipate or notice. In order to become material for him to negative, it must be contained in and form a part of the enacting clause itself. Here the enacting clause, so far as the offense charged is concerned, is the first division of section 42, chapter 169, and the exception is found in section 39 of chap. 7. No direct reference is made in the enacting clause to section 39 or any other part of chapter. 7, nor is the same or any part of it incorporated into it. It is true that we are obliged to look to chapter 7 to ascertain when an offense has been committed, and the defendants, in a proper case, might be compelled to rely on its provisions to confirm their innocence; but this does not make that chapter a part of the enacting clause, as was contended by counsel. Counsel referred, and very properly, to the provisions of the constitution to ascertain what were the qualifications of the elector, and if it be true that chap. 7 be a part of the enacting clause, then why is not the constitution and all other laws which have a bearing upon the question? To hold that the prosecutor was in this case bound to aver that Pierce did not take the oath prescribed by section 36, would be to impose on him the intolerable burden of denying in advance all the defenses which the accused might by law set up or urge. It was properly omitted in the indictment.

The objection of duplicity is untenable. The rule is well settled that, where a statute makes either of two or more distinct acts, connected with the same general offense and subject to the same measure and kind of punishment, indictable separately and as distinct crimes, when each shall have been committed by different persons or at different times, they may, when committed by the same person at the

same time, be coupled in one count, as constituting altogether but one offense. In such cases the several acts are considered as so many steps or stages in the same affair, and the offender may be indicted as for one combined act in violation of law; and proof of either of the acts mentioned in the statute and set forth in the indictment will sustain a conviction. Among the numerous authorities on this subject, we refer to the following: *R. vs. Bowen*, 1 Denison's C. C., 21; *State vs. Fletcher*, 18 Mo., 425; *State vs. Morton*, 27 Vt., 310; *Mackey vs. State*, 3 Ohio St., 363; *Stoughton vs. State*, 2 id., 562; *Commonwealth vs. Twitchell*, 4 Cush., 74; *Hinkle vs. Com.*, 4 Dana, 518; and *State vs. Price*, 6 Halst., 203. There can be no doubt that the receiving and sanctioning the reception of a vote, under the circumstances stated in the statute, are distinct offenses, and when committed separately may be indicted as such, but the indictment is not double or uncertain because both are joined in the same count for the reasons above stated. According to the authority of Mr. Chitty, it may indeed be doubtful whether the objection of duplicity can be urged in any case of misdemeanor. At page 54 of the 1st volume of his treatise on criminal law, he says: "In the case of *misdemeanors*, the joinder of several offenses will not, in general, vitiate in any stage of the prosecution. For, in offenses inferior to felony, the practice of quashing the indictment, or calling on the prosecutor to elect on which charge he will proceed, does not prevail. But on the contrary, it is the constant practice to receive evidence of several libels and assaults upon the same indictment. It was indeed formerly held that assaults on more than one individual could not be joined in the same proceeding, but this is now exploded."

It is very possible, as was contended by the counsel for the state, that the language of the record does not express the views of the learned judge who presided at the trial in the circuit, nor accurately convey the ideas which he intended to give to the jury, but that is a matter which we cannot notice. We must be governed by the record as we find it, and by the charge as we understand and as we suppose the jury must have understood it. According to the record, we

are informed that the jury were told that if the plaintiffs in
error knew the facts which were relied upon as constituting,
and which the judge held did constitute, such a wager as
disqualified Pierce, then they were guilty of the offense de-
scribed in the statute, and that it made no difference whether
their receiving, or sanctioning the reception of, his vote under
such circumstances, was or was not the result of an honest
but misguided judgment on their part, of the law arising
from those facts, and that an honest ignorance of the law
would not excuse them when thus acting. These instruc-
tions are so obviously incorrect, and the opposite proposition
so strongly fortified by the principles of natural reason and
justice, that it needed not the vast array of authorities cited
by counsel to establish it. Whether there was a wager, was
a question of law and fact combined, in passing upon which
the plaintiffs in error were acting in an official and *quasi* ju-
dicial capacity, and were bound to determine the law as well
as the facts. They were obliged by law to act and to decide
upon the qualifications of every person offering, as a duly
qualified elector, to vote at the polls at which they presided.
When those qualifications were, by some proper method,
called in question, and when so acting, the most that reason
or justice could require of them was a *bona fide* effort to
discharge their duties according to the best of their know-
ledge and ability; and if, in so doing, they committed an
obvious but sincere mistake of the law or error of judgment,
they are not criminally responsible therefor. The law only
required of them true candor and sincerity, and it will only
punish them for corruption and falsehood—for acting contra-
ry to their own sense of duty and the dictates of their own
consciences. In this sense we understand the word "know-
ingly" to be used in the statute: that is, knowing that their
duty and the obligation of their oaths commanded them to
act otherwise. It is the wicked intent or corrupt motive
which the laws punish as a crime, and it cannot be supposed
that it was the intention of the legislature, in this instance, to
substitute for them the upright but misdirected efforts of the
mind or judgment of one whose action was not voluntary
but in obedience to the requirements of the law. The max-

June Term, 1860.

im that ignorance of the law will not excuse, could only be applied to this case so far as to prevent the plaintiffs in error from setting up their ignorance of the penalties inflicted by it as an excuse for their willful violation of the duties which it imposed upon them. This they clearly could not do. Upon this last point the judgment of the circuit court is reversed, and a *venire de novo* awarded.