(No. 20714.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ELMER P. LANGGUTH *et al.* Plaintiffs in Error.

*Opinion filed February 19, 1932.*

Jones, J., specially concurring.

Frank J. Tyrrell, and Eugene L. McGarry, for plaintiffs in error.

Oscar E. Carlstrom, Attorney General, John A. Swanson, State's Attorney, and James B. Searcy, (Edward E. Wilson, Henry T. Chace, Jr., and Grenville Beardsley, of counsel,) for the People.

Per Curiam: Elmer P. Langguth and Laverne D. Lindgren were convicted in Cook county upon an indictment charging them with unlawfully, deceitfully, willfully, knowingly and corruptly making and causing to be made a false and fraudulent statement, and unlawfully, deceitfully, willfully, knowingly and corruptly causing such statement to be subscribed by Langguth and with delivering such statement to Fred R. Pope and Paul R. Wilkinson, auditors appointed by the Auditor of Public Accounts to make an examination of the affairs of the People's State Bank of Maywood, a bank organized under the statute of the State of Illinois to revise the law in relation to banks and banking, of which Langguth was president and Miss Lindgren

cashier. The indictment further charged that the statement was false in stating the resources and liabilities of the bank, in this: That it stated that loans on collateral security amounted to $177,467.23 and overdrafts amounted to $140.42; that demand deposits amounted to $165,338.17; that the liabilities shown omitted the amount of $40,000, being two deposits made in the bank by the Bellwood State Bank, amounting to $50,000 less drafts of the amount of $10,000, whereas the defendants knew the loans on collateral security amounted to $172,467.23, the demand deposits to $284,020.24 and the overdrafts to $2753.73, and that the acts of making and subscribing the statement and delivering it to the bank examiners were willfully, unlawfully, deceitfully, knowingly, corruptly and feloniously done with intent to deceive them. The defendants were sentenced to imprisonment in the penitentiary and have sued out this writ of error.

The first error assigned is that the court refused to quash the indictment on the alleged ground of duplicity, and it is argued that the indictment, which consisted of one count, only, charges that the defendants made and caused to be made a false statement and caused it to be subscribed by Langguth and delivered it to Pope and Wilkinson as a true statement, and that these acts are repugnant to one another, because, while either or both defendants could make the statement or could cause it to be made, both defendants could not both make it and cause it to be made, and while Langguth's co-defendant could cause him to sign the statement both defendants could not cause him to sign it; that each of these acts is a distinct and separate offense, and the count charging them conjunctively is bad for duplicity.

The Banking act declares that any officer, director or employee of any bank or association organized under its provisions who shall willfully and knowingly subscribe to or make or cause to be made any false statement with intent

to deceive any person or persons authorized to examine into the affairs of such bank or association, upon conviction thereof shall be punished by imprisonment in the penitentiary. The act against which this section of the statute is directed is the willful deception by an officer, director or employee of a bank of any person authorized to examine into its affairs, by a false statement, whether made by the officer, director or employee personally or caused by him to be made by another or given authenticity by his signing the statement made by another. In either case but one crime has been committed, whether only one or all the acts mentioned by the statute have been done by the accused. "If, as is common in legislation, a statute makes it punishable to do a particular thing specified, or another thing, or another, one commits the offense who does any one of the things, or any two or more or all of them, and the indictment may charge him with any one or with any larger number, at the election of the pleader, employing, if the allegation is of more than one, the conjunction 'and' where 'or' occurs in the statute." (Bishop on Stat. Crimes, sec. 244.) This doctrine was followed in *Blemer* v. *People,* 76 Ill. 265, and *People* v. *Reed,* 287 id. 606. In *Hoyt* v. *People,* 140 Ill. 588, the defendant was convicted on an indictment which charged that he and a co-defendant agreed to burn an elevator and in pursuance of their agreement did burn it. A motion to quash the indictment for duplicity was made and overruled, and upon a writ of error it was held that the conspiracy was merged in the consummated act of burning, and that the count charged only the offense of arson and not the independent offenses of a conspiracy to commit arson and arson. The same principle, that when a penal statute mentions several acts disjunctively and prescribes that each shall constitute the same offense and is subject to the same punishment all or any of such acts may be charged conjunctively as constituting a single offense, is announced in *State* v. *Pirkey,* 22 S. D. 559, *State* v. *Kerr,*

3 N. D. 523, *State* v. *Conner*, 30 Ohio St. 405, *State* v. *Haven*, 59 Vt. 309, *State* v. *Brady*, 16 R. I. 51, *Byrne* v. *State*, 12 Wis. 519, *Sprouse* v. *Commonwealth*, 81 Va. 374, *People* v. *Harold*, 84 Cal. 567, and *State* v. *Nations*, 75 Mo. 53. The court did not err in overruling the motion to quash the indictment.

It is next contended that the court erred in admitting in evidence testimony that a note for $5000, dated January 29, 1930, purporting to be signed by John Braeseke, was not signed by him or by his authority but was signed by one of the employees of the bank under the direction of Langguth, who told her that Braeseke was in California and that Langguth had sent him a note to be signed which had not been returned but he expected it in a day or two, and he wanted the note to be in the vault while the auditors were in the bank and that when the new note came in he could replace the old one. At that time the bank examiners were in the bank. Pope, one of the bank examiners, testified that the Braeseke note was a forgery, and two other witnesses referred to it as a forgery. On objection this testimony was stricken out and the jury was instructed to disregard it. Braeseke testified that he was in California from October 11, 1929, until May 27, 1930, and that he did not sign the note and did not authorize any other person to sign his name. It is objected that the evidence in regard to this note tended to prove a different crime from that charged in the indictment, that its admission was prejudicial to the defendant, and that the exclusion of the statements of the witnesses that the note was a forgery and the instruction to the jury to disregard such statements did not cure the error. The testimony that the note was not signed by the purported maker or by anybody authorized by him was competent to show that it was not an asset of the bank and that the statement which included it among the resources of the bank was false. Because it was competent evidence of a fact material to the issue it was admissible in evidence whether it tended

to prove another crime or not. The statement of the witnesses that the note was a forgery added nothing to the effect of the facts proved. The court struck out these statements, and the fact that the jury heard them does not require or justify the reversal of the judgment.

Objection was made to the evidence of Miss Campbell, who was employed as a book-keeper in the bank, that she and Miss Lindgren pulled sheets out of the commercial ledger on January 31, 1930, after the examiners came to the bank, and that she had done the same thing on previous occasions when the bank was examined, four times during her employment, and that this was done at the direction of Langguth. The objection made to her testimony concerning this transaction was that it was evidence of a separate and distinct offense having no bearing on the issue on trial. The testimony tending to prove the withdrawal of the sheets from the ledger on previous occasions when the bank was examined, as well as similar acts on the day of the last examination, January 31, 1930, was competent evidence tending to show the intention of the plaintiffs in error to deceive the bank examiners. *People* v. *Weil*, 244 Ill. 176.

The plaintiffs in error insist that there was a variance between the allegations of the indictment and the proof because the State failed to make any proof of the averment in the indictment that the statement made by the plaintiffs in error omitted from the liabilities a deposit of $40,000 due to the Bellwood State Bank, and the defense proved that the Bellwood State Bank never had any account with the People's State Bank of Maywood, and also that the village of Bellwood made deposits in the People's State Bank of the amounts averred in the indictment to have been deposited by the Bellwood State Bank. Referring back to the allegations of the indictment, it will be observed that it charges that the statement was false and fraudulent and recited that demand deposits amounted to $165,338.17 whereas the demand deposits did amount to $284,020.24, as

the defendants knew, and that the liabilities recited omitted an amount of $40,000, being two deposits made by the Bellwood State Bank amounting to $50,000 less drafts of $10,000. The People offered no evidence to prove these two deposits of $50,000 by the Bellwood State Bank. There was therefore an entire failure of proof as to this charge of the indictment. There were, however, charges in the indictment that the statement was false in other respects, as that the loans on collateral security amounted to $177,467.23 whereas in fact they were only $172,467.23, and that the overdrafts were only $140.42 whereas in fact they were $2753.73. The failure of proof in regard to the deposit of the Bellwood State Bank did not constitute a variance—it was merely a failure of proof in respect to one charge of falsity in the statement. It did not affect the other charges in regard to which evidence was offered. There was no occasion for the defendants to introduce evidence on these alleged deposits of the Bellwood State Bank. There was no variance.

The plaintiffs in error contend that the evidence was not sufficient to sustain the verdict because it does not show that the statement was made to persons authorized to examine the bank. The persons who were engaged in examination of the bank testified that they were examiners appointed by the Auditor of Public Accounts, and the Auditor of Public Accounts himself testified that he had appointed the persons engaged in the examination as bank examiners. No objection was made to his testimony. The statute provides that the Auditor shall appoint a suitable person or persons to make an examination of the affairs of every bank established under the provisions of the act and they shall make a full and detailed report of the condition of the bank to the Auditor. The persons who examined this bank and to whom this statement was delivered were examiners so appointed and with such authority, and having made the examination, no objection having been raised to their right to

do so, the reports having been given to them and delivered to the Auditor of the State and kept in his files, as the evidence shows, it will be presumed that they were acting under the authority of the Auditor, in the absence of evidence to the contrary.

It is also insisted that the evidence does not show that the venue was proved. Several examiners were engaged in the examination—Mathewson, Pope, Wilkinson, Edgerton and others—and the evidence clearly showed that the statement was made and signed by Langguth in the People's State Bank of Maywood and was there delivered to the examiners, and Pope, who testified to all these things, stated that all he had testified to occurred in Cook county. The venue was sufficiently proved.

In two or three cases the court repeated the answer given by the witness or in referring to what the evidence was, or stated what the previous evidence of a witness had been. In each case where he made the reference to the witness' evidence, upon the suggestion of the defendants' counsel he struck his statement from the record. Trial courts should be very careful about making any comment on the evidence given during a trial. The recollection of the judge may be wrong, and whatever he says may be given by the jury greater weight than he intended or a different meaning. The judge was manifestly fair in this trial, and the judgment ought not to be reversed on account of his remarks.

Error in instructing the jury is assigned, and counsel in their argument have criticised one instruction, only, which was given. It advised the jury that on the question of the falsity of the statement it was not necessary to prove the statement false in all the respects charged in the indictment but it was sufficient if the People had proved beyond a reasonable doubt that it was false in any one of the ways charged in the indictment and was knowingly and willfully made by the defendants with intent to deceive any person authorized to examine into the affairs of the bank by the

Auditor of Public Accounts. This was in accordance with the views expressed in this opinion and it was not error to give the instruction.

Objection is made that the conduct of the assistant State's attorney in the trial of the case, and especially in his argument to the jury, was prejudicial to the defendants, and that the judgment should be reversed for that reason. The argument of the assistant State's attorney went beyond the record in its denouncement of supposed clandestine illicit relations between the defendants, which were not proved, and in its reference to the conduct of Miss Lindgren as of a woman cold and calculating, as the jury could determine from her demeanor in the court room, which they had a right to take into consideration. This argument was an appeal to the passions of the jury and would have justified more severe treatment at the hands of the court than it received. The court, however, did, on the objection of the plaintiffs in error's counsel, sustain objections to the improper remarks and informed the jury that they must decide the case solely upon the evidence and the instructions of the court. These remarks of the assistant State's attorney were clearly outside the issue and it was a breach of professional duty to make them which cannot be justified. The issue to be tried was whether the defendants had made a false statement with intent to deceive the examiners with regard to the affairs of the bank, and the evidence showed clearly that Langguth was guilty of this offense. No other conclusion could reasonably be reached, and we cannot reverse the judgment as to him because the assistant State's attorney forgot his duties and violated the proprieties of such a trial.

As to plaintiff in error Laverne D. Lindgren, the evidence against her is not of such clear and convincing character that no other verdict could reasonably have been rendered by the jury. Evidence was introduced showing that

Langguth admitted his guilt to the bank examiners, stockholders of the bank and public officials and detailed to them the method by which he had deceived the examiners on previous occasions. No such evidence was produced as to Miss Lindgren. A bank examiner testified that the false statement upon which the indictment was based was given to him by Miss Lindgren. It does not appear, however, that she had any knowledge of the contents of the statement. It was made up by Langguth and he swore to it before a notary public who was an employee of the bank. The girl employee who actually forged the Braeseke note testified that Miss Lindgren was present when Langguth told witness to sign Braeseke's name to the note. There is no testimony as to anything said by Miss Lindgren on that occasion. Miss Campbell, the book-keeper, testified that she and Miss Lindgren pulled sheets out of the commercial ledger on January 31, 1930, after the examiners came to the bank; that she had previously pulled such sheets four times during her employment, at the direction of Langguth; that on the occasion in question Miss Lindgren did not tell her what sheets to pull out of the ledger but that witness just took the sheets out at random; that Miss Lindgren did not tell her what to do with the sheets after witness took them out of the ledger; that witness took the sheets and put them in another file in the bank, where they were open to inspection by anyone in the bank; that after withdrawing the sheets she made a run of them on the adding machine, and that the figures so arrived at were the figures which were incorporated in the statement of the financial condition given by Langguth to the bank examiners; that she made no mention of Miss Lindgren's connection with the withdrawal of the sheets until after her falsification of the ledger accounts had been discovered and witness had been threatened by the assistant State's attorney with indictment, and she believed she was in danger of such indictment. The mis-

conduct of the assistant State's attorney was of such a character that it would naturally tend to prejudice the jury against Miss Lindgren.

The judgment of the criminal court is therefore affirmed as to plaintiff in error Elmer P. Langguth and is reversed and the cause remanded as to plaintiff in error Laverne D. Lindgren.

*Judgment affirmed as to Langguth.*
*Reversed and remanded as to Lindgren.*

Mr. JUSTICE JONES: I do not concur in the reversal of the judgment and remandment of the cause as to plaintiff in error Lindgren.