(No. 22588.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* AL MANFUCCI *et al.* Plaintiffs in Error.

*Opinion filed December 18, 1934—Rehearing denied Feb. 6, 1935.*

JOHN BENEDEK, STEPHEN LEE, and DANIEL D. GLASSER, (JOHN M. LONERGAN, of counsel,) for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. JUSTICE HERRICK delivered the opinion of the court:

On a trial before a jury in the criminal court of Cook county, the plaintiffs in error, Al Manfucci and Nicholas Bravas, (hereinafter called the defendants,) together with Joseph Krupinski, were found guilty of robbery while armed with a dangerous weapon. The defendants' motion for a new trial was overruled and they were sentenced to the penitentiary. They have sued out separate writs of error to review the judgment of conviction against them and have filed separate briefs.

Each defendant assigns as error that the evidence failed to establish his guilt beyond a reasonable doubt. The defendant Bravas, in addition thereto, assigns that the trial court erred in restricting the cross-examination of certain witnesses for the People.

The record shows that the prosecuting witness, Mila Winston, and her husband, Arthur, lived in an apartment at 2718 Fulton street, in Chicago. Alonzo Burke and Mary White roomed in the Winston home. These four persons are colored. The Winstons gave a party at their home on Saturday night, September 23, 1933. The guests left the Winston home about 3:30 A. M. of September 24. About 4:00 A. M. someone knocked at the door and said, "Art, this is Joe; open the door." Winston opened the door, whereupon four white men, one armed with a shotgun and one armed with a pistol, entered the room. One of the intruders stated, "This is a stick-up." The four occupants of the apartment were ordered into the kitchen, where there was a light burning. The uninvited visitors proceeded to ransack the living room and bed-rooms, lifted up the rugs, looked under the bedding, and were in the

apartment about thirty minutes. While the robbers were engaged in searching the premises, Burke, unnoticed, left the kitchen, reached a telephone in an adjoining room and telephoned to the police station. He was missed by one of the robbers, who found him in the room where Burke had sent the telephone message. Burke was thereupon violently assaulted by two of the robbers. At this juncture a siren was heard and the robbers fled. One of the men, later identified as Bravas, with a shot-gun in his hands, departed through the back door, the others leaving by the front door. The robbers took with them an electric clock, a fountain pen and about five dollars in money. When the police car drove up, officers Steinway and Nevera saw an automobile, with its lights flickering, backing away from the apartment building. The motor car continued backing, swerving back and forth across the street, until it ran upon the sidewalk under the elevated railroad tracks. Two men there jumped out of the automobile, exchanged shots with the officers, ran up the elevated tracks and escaped. The officers found the. electric clock in the abandoned automobile. A short time later Manfucci walked out of a passageway in the neighborhood of the apartment which had been robbed. He was immediately arrested by officer Nevera. Krupinski the same morning was found at his home suffering from a gunshot wound. Bravas was arrested several days later.

We take up first the case as made against the defendant Manfucci. It is earnestly urged that the identification of Manfucci as one of the robbers is not sufficient to prove his guilt beyond a reasonable doubt. Officer Nevera testified that when Manfucci stepped out of the passageway he was breathing hard and was excited. When he was arrested he was immediately taken to 2718 Fulton street by officers Nevera and Steinway and there viewed by the four occupants of the flat. These four occupants there identified Manfucci as one of the robbers. On the trial of

the case in the criminal court, two witnesses, Mary White and Alonzo Burke positively identified Manfucci as one of the robbers. Mary White was asked if she saw the man in court who had the pistol. She pointed out Manfucci and stated, in substance, that she thought he was the man who had the pistol but that she was so excited she could not be positive on that matter. Mila Winston was uncertain, and so wavered in her identification of Manfucci that we cannot say her evidence is of any probative value in the identification of Manfucci as one of the robbers.

Manfucci testified in his own behalf. He denied any complicity in the robbery. He testified, in substance, that he had been to a dance with a young lady until about 4:00 A. M. September 24; that they took a street car when they left the inn where the dance was held; that he did not take his companion home but left her on the street car; that he left the street car and was trying to locate a house at 411 Campbell avenue, and that this house was a house of prostitution. He further stated that when arrested he told the policemen he was looking for this house and gave the address of the girl with whom he attended the dance. In rebuttal the People called officers Steinway and Nevera. Steinway testified that Manfucci did not say anything about being out with a girl and did not tell him the address of such girl. Steinway and Nevera both testified that Manfucci did not tell them he was in search of a house of prostitution, and Nevera stated that there is no such address as 411 Campbell street.

We now take up the case of the defendant Bravas. About a week after the commission of the robbery, Arthur Winston, Mila Winston and Mary White, at the Warren avenue police station, in a line-up of several persons, identified Bravas as one of the robbers. Alonzo Burke testified that about a month after the robbery he testified in the boys' court, and on that occasion when he walked into the court room he recognized Bravas as one of the robbers.

On the trial of the present case Burke identified Bravas, and stated that he was the man who during the course of the robbery struck witness over the head with a gun.

Frank DeSalvia testified as a witness for Bravas, that Bravas was present at the "grand opening" of DeSalvia's saloon, at 1057 North Hamlin avenue, from 7:00 P. M. on September 23 until 9:15 the next morning, and that Bravas was never out of DeSalvia's sight for more than ten or twenty minutes of that period. This witness on cross-examination stated that the grand opening lasted for three days and during that time about 500 or 600 people attended the opening.

On the cross-examination of Mila Winston and Mary White each was asked, in substance, if at the hearing in the boys' court she had not testified that she could not identify Bravas as one of the men who committed the robbery. Objections were sustained to these questions. It is urged that such rulings were erroneous. These rulings were erroneous. The purpose of the questions was to lay the proper foundation for the impeachment of these witnesses on the subject of their identification of Bravas. However, later in the trial, when Bravas put in evidence to refute the People's case, he called as witnesses in his behalf Frank DeSalvia, George Bravas and officer Steinway to testify as to the statements of Mila Winston and Mary White made as to the identification of Bravas at the hearing in the boys' court. DeSalvia testified that Mary White and Mila Winston each stated that she could not identify Bravas, and that Mary White stated that she was not sure and could not identify Bravas. Steinway stated he did not remember the testimony of Mary White; that Mila Winston stated that Bravas looked like one of the robbers with reference to his build and height but she was not so sure about his "facial features." Bravas did not testify and did not offer any further evidence on this subject. He had the benefit of the evidence which tended to

impeach and impair the weight of the testimony of the witnesses Mila Winston and Mary White as to theif purported lack of identification of him at the hearing in the boys' court, as fully as though such witnesses had answered the impeaching questions. The error committed by the trial court in sustaining objections to the impeaching questions did not materially prejudice Bravas' case, and in the state of the record such ruling did not constitute reversible error. *People* v. *Lenhardt,* 340 Ill. 538; *People* v. *Connors,* 301 id. 249.

The fact that there is a conflict in the evidence as to the identity of the defendants or that there is some evidence of an alibi in behalf of one of the defendants does not of itself warrant a reversal of the case. The jury saw and heard the witnesses testify for the People and the defendants. The jury was given the opportunity, which is not afforded this court, of seeing the witnesses both for the People and for the defendants, of listening to the testimony of the various witnesses, and of observing their conduct and demeanor while testifying. The questions of identification and the whereabouts of the defendants at the time of the robbery were questions for the jury's determination. The weight to be accorded the testimony of the several witnesses was within the province of the jury, and unless this court is convinced that the verdict of the jury is contrary to the weight of the evidence it is not within the sphere of this court to set aside the verdict. *People* v. *Kelley,* 330 Ill. 562; *People* v. *Jones,* 310 id. 275; *People* v. *Martin,* 304 id. 494.

After a careful consideration of all the evidence in the record we are not able to say that the verdict of the jury was not justified by the evidence.

The judgment of the trial court is therefore affirmed.

*Judgment affirmed.*