(No. 24192.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PAUL DIEKELMANN, Plaintiff in Error.

*Opinion filed October 22, 1937—Rehearing denied Dec. 9, 1937.*

374

WM. SCOTT STEWART, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and BLAIR L. VARNES, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Paul Diekelmann was convicted in the criminal court of Cook county, on a jury trial, on the charge of kidnaping an infant. He was sentenced to imprisonment in the peni-

tentiary for the term of thirty years. He has sued out this writ of error to review the record.

The indictment consisted of two counts. The first charged that on April 17, 1936, the defendant enticed away one Dorothy Hubick, an infant four years of age, without the consent of her parents, with the intent to conceal her. The second count charged that the defendant did conceal and imprison the infant without the consent of her parents. Section 166½ of the Criminal Code, under which the indictment was drawn, is as follows: "Whoever wilfully and without authority forcibly takes or carries or entices away any infant under the age of twelve years, without the consent of the parent, guardian or lawful custodian of such child, with intent to conceal or imprison such infant, or whoever wilfully and without authority conceals or imprisons an infant under the age of twelve years without the consent of the parent, guardian or lawful custodian of such infant, shall, upon conviction, be imprisoned in the penitentiary for his or her natural life or for any number of years not less than one year." State Bar Stat. 1935, p. 1204.

The defendant is a drug clerk. He lived with his wife and small son on the first floor of an apartment building at 1834 Melrose street, Chicago. The family of Dorothy Hubick lived at 1805 School street in the same neighborhood where the defendant resided. The mother of Dorothy Hubick testified that on April 17, 1936, shortly before 6:00 o'clock in the evening, she had given Dorothy a bath, dressed her in clean underwear, gave her two pennies and permitted her to go outdoors to play; that about two minutes before 6:00 o'clock the witness was at the hall door talking to Dorothy who was in front of the house. At that time the defendant (whom the witness did not then know by name) passed the door, and Dorothy was missing about the same time. The witness, after hastily looking for her daughter, entered the house, put on her coat, went out

the front entrance and to an alley and called her child's name, but did not see her. She then telephoned to a police officer and told him that a man had picked up her baby. She thought the man who had passed her home might be the one who had the child. The child returned to its home, under the circumstances hereafter related. Police officers went to the defendant's apartment. They then informed the witness that they had the man who took her baby, and she went to the defendant's apartment and there saw the defendant. He had on his pants, which were unbuttoned, but did not have on a vest or jacket.

Mary Wimmer testified that she lived in the apartment above the defendant; that in the early afternoon of April 17, 1936, no one appeared to be at home in the defendant's apartment. She did not see the defendant come home but at about 6:00 o'clock she heard a man's footsteps and the sound of the feet of a child, and afterward she heard a child's voice which sounded as if it came from the defendant's apartment. After 6:00 o'clock the defendant's mother came to his apartment and asked him to open the door, but she was not admitted and went away with the defendant's small son. The defendant's wife and her mother, Mrs. Schmidt, then came to the defendant's apartment and the witness heard the defendant's wife say, "Open the door, Paul," and afterward there was a noise as if she were pounding or kicking against the bedroom door in the defendant's apartment. The witness heard the defendant say, "Stay out; there is a child in here," and that he swore at the time. The defendant's wife and her mother then went out and the witness saw her talking to the landlady of the defendant's apartment. The witness further testified that at about 7:30 o'clock she saw the defendant and Dorothy, the child, near the alley gate; that the defendant told the little girl to go home and waved his hand; that the little girl went down the alley and the defendant went inside.

The witness saw three boys outside at the same time she saw the little girl.

Mary Haas, one of the owners of the premises where the defendant resides, testified that a little after 6:00 o'clock on the evening of April 17, 1936, she saw the defendant's wife go to the front porch alone, but did not see the defendant's mother that evening. Three boys, Ralph Gillespie, Willard Niemic, and Otto Wenzel, the first aged ten, and the latter two each eleven years of age, all testified that they were playing in an alley between School and Melrose streets; that the defendant was near a lamp post and the little girl was a short distance down the alley; that the defendant told the child to get her wagon, and he was pointing; that the child was crying and the three boys took her home. One of the boys testified that the cause of the little girl's crying was that the defendant pushed her.

An aunt of the Hubick child testified to having made an examination of the child and her clothing. The police officer who responded to the telephone call of Mrs. Hubick, testified that he and other officers toured the district in search of the child and the man described as the one who might have taken her. After the examination of the child by its aunt the officers went to the defendant's apartment and found the defendant lying on a couch with his eyes closed and covered with a quilt. The officer had a revolver in his hand and touched the defendant and told him to sit up. The officer was not dressed in uniform but announced that he was a police officer. As the officer started to cross the room in order to open a door the witness testified the defendant jumped to his feet and picked up a chair, and as he started to raise it he, the witness, struck him in the face, causing the defendant's mouth to bleed. The defendant released the chair and fell back on the couch on which he had been lying. The police officers found two pennies in the defendant's apartment,—one on the bed and one on the floor.

A physician testified that he examined the defendant; that he saw a laceration on the left side of his upper lip. There was some blood on the gums about the upper teeth. The defendant had no cuts or abrasions on his body. On the index fingers of each hand was blood uniformly distributed, and there was blood under the finger nail and cuticle, some of which was fresh and some had dried. The doctor testified that he examined the Hubick child and found bruises on her face, one of which extended along the left side from the region of the eye to the ear. A vaginal examination disclosed that the hymen was completely torn and there was blood in the vagina. On cross-examination the defendant's counsel sought to show that the doctor had, in the presence of witnesses during a recess of the court, stated that there was no evidence of semen present, and that if permitted to testify upon the subject the doctor would so state. The same offer was made with respect to the absence of semen on the clothing of the little girl. People's objections to the offer were sustained. The defendant's counsel objected to certain questions and answers contained in a statement or confession alleged to have been made by the defendant to police officers at the police station on the night of the alleged crime, which was proposed to be read and was read in evidence on behalf of the People. The questions and answers were with respect to indecencies of a revolting character committed by the defendant. The statement in its entirety was admitted in evidence.

On behalf of the defendant the latter's mother testified that she went to the defendant's apartment several times on April 17, 1936. She took care of the defendant's child that day and went in the afternoon to the defendant's home after 4:00 o'clock with the child. She knocked at the front door but received no response and then went to the rear door and used her key. She was there when the defendant returned. He was drunk. He lay on the sofa and went to sleep; that about 6:00 o'clock she went to a store about

a block away and took the defendant's child with her. She was gone only about eight or ten minutes. The defendant was on the sofa when she left and when she returned, and when she left his apartment at eight o'clock that night the defendant was asleep on the sofa. When she had gone a short distance from the apartment she saw people running and saw a policeman in the yard, and asked him what was the matter. During the time the witness was in the defendant's apartment there was no little girl present.

A sister of the defendant testified that on April 17, 1936, at about 6:30 o'clock she met the wife of the defendant near the place of the employment of the defendant's wife and that the latter boarded a street car to go home about 8:30 o'clock, and she afterward learned the defendant had been arrested.

The defendant, in his own behalf, testified that he did not know the Hubick child before his arrest, but saw her after the police arrived at his apartment. He denied kidnaping or having the child in his apartment, and stated that he did not see her. He testified that he had been in a tavern on School street and after he was arrested he was taken back to the tavern. He testified that three police officers came to his apartment and he was asleep on a sofa at that time. He denied that he picked up a chair before he was struck but admitted that he was intoxicated; that the little girl was brought to his apartment and after she was taken from the room the police officers beat him; that his lip and the palm of his hand were cut and he later discovered that he had two fractured ribs; that the officers ordered him to lower his trousers; that he was bleeding and crumpled up on the bed; that the officers made him remove his underwear, and afterward, at the police station, took his shirt. The defendant testified that a large crowd had gathered outside his apartment and the officers threatened to turn him over to those gathered there, and told him that the father of the child had a gun and was looking

for him. The officers asked the defendant if he had a little girl in his apartment, and when he said he had not, two officers struck him; that the officers told him he had to answer the questions and answer them in the right way, placing emphasis on the word "right." He testified that he made a statement, but that the answers made to the questions read by the assistant State's attorney were not true, and that the reason he made such answers was because he was threatened with bodily injury if he did not make them as he did.

In rebuttal, the police officers who were present when the defendant was arrested denied that he was struck or beaten and denied that threats were made against him. Other officers denied that the defendant was beaten while he was at the police station. The assistant county physician at the county jail testified that he examined the defendant and that the latter did not have any broken or fractured ribs. The foregoing is the substance of the testimony heard on the trial.

Motions to quash the indictment and for a bill of particulars were overruled. It is contended that the court erred in denying the motions. The basis of the motion to quash the indictment was that section 166½, as to the penalty imposed, was repealed by implication. It will be observed that section 166½, heretofore quoted, is in two parts, one of which provides as to a forcible taking or enticing with intent to conceal, and secondly, the actual concealing or imprisoning of an infant. In this case the first count charged the enticing with intent to conceal the infant, and the second count charged the concealing and imprisoning of the infant. The punishment provided is the same whether the proof shows only an attempt to conceal, after enticing, or that the infant was actually concealed or imprisoned. It is urged that section 166½ was repealed in 1923 by an amendment of section 166 of the Criminal Code, upon the subject of kidnaping for ransom. (Laws

of 1923, p. 318.) Section 166½ embraces only the offense of kidnaping children under the age of twelve years, no matter what the purpose may be for committing the acts prohibited by the section. It is a complete act. Sections 166 and 166½ are independent of and separate from each other. (*People* v. *Jones,* 242 Ill. 138.) The penalty provision of section 166½ has not been repealed.

When the motion for a bill of particulars was made the specific information requested was, in substance: What crime was alleged in the indictment; what statute violated; what facts and circumstances led to the conclusion that the infant was enticed; where and when the enticement took place; whether it was unlawful, felonious and wilful; whether the enticement was with intent to conceal and imprison, and where the defendant concealed and imprisoned the infant. The indictment was not uncertain in its allegations, but stated simple facts in the language of the statute. A disclosure of the information requested would be more a disclosure of evidence upon which the prosecution proposed to rely for a conviction than a disclosure of facts omitted from the indictment which were essential in the preparation of the defense. The purpose of a bill of particulars is to provide more particular averments in order to enable the defendant to understand the nature of the charges against him or to prepare his defense. (*People* v. *Payne,* 359 Ill. 246; *People v. Bain,* id. 455.) A defendant is not entitled to have a general disclosure of evidence of the prosecution in advance of the trial. Whether the prosecution shall be required to furnish a bill of particulars in a given case rests in the discretion of the trial court, and only a clear abuse of that discretion in the denial of a motion is error. *People* v. *Cox,* 340 Ill. 111.

· The contention was made that the prosecution should have been required to elect on which count the trial would proceed. A felonious enticement with intent to conceal the child is the gist of the first count, while a felonious con-

cealment and imprisonment is the gist of the second count. The penalty is the same as to both acts alleged and each count constitutes the crime of kidnaping a child. The allegations of each count grow out of and relate to the same transaction. Under such circumstances an election will not be required. (*People* v. *Routson*, 354 Ill. 573; *People* v. *Perrello*, 350 id. 231.) A general verdict will be presumed to be based on any good count in the indictment to which the proof is applicable. *People* v. *Gillespie*, 344 Ill. 290.

It is contended that there is no proof that the child was enticed as charged in the first count, or that the defendant concealed and imprisoned the infant as charged in the second count, one or the other of which facts was necessary to be shown in proof of the *corpus delicti*, depending upon which count the verdict was rendered. As stated, a general verdict would be presumed to be based on any good count. The facts mentioned were subject to proof by circumstantial evidence the same as any other fact or facts in a case. (*People* v. *Gillespie, supra; People* v. *Gawlick*, 350 Ill. 359.) A child four years of age might wander away from its home without any inducement on the part of any person, but, in this case, immediately after the mother had been talking to her child it was missing and the defendant at about the same time was seen passing the place where the child lived. Thereafter a child's voice was heard in the apartment of the defendant, and the child was found under circumstances showing it had been in the defendant's apartment. There was testimony that the defendant said he had a child in his apartment. The defendant in his confession admitted that the child was in the room and that he locked the rear door. He would not admit his mother or his wife, and thereafter he was seen attempting to induce the child to return to its home. The child had two pennies when it left its home and two pennies were found on the bed and on the floor of the defendant's

apartment. The circumstances were sufficient to justify a jury in finding that there was enticement and imprisonment. Circumstantial evidence is good evidence and a conviction founded upon such evidence will be sustained if other legal requirements have been met. *People* v. *Betson,* 362 Ill. 502.

It is contended that testimony was improperly admitted concerning the defendant's taking indecent liberties with the child, which was not necessary to be related in the course of the proof of the kidnaping charge. Unless there is some connection between the facts charged and those proved it is improper to admit evidence of a distinct and independent crime. (*People* v. *Richie,* 317 Ill. 551; *People* v. *Lane,* 300 id. 422.) Though the evidence may have shown the offense of taking indecent liberties with the child the facts relating thereto were offered in the course of proving the detention and concealment of the infant. There was evidence that the child left its own home wearing clean underclothing immediately before it was missing. There was blood on its underwear when it returned home. There was blood on a bed sheet in the defendant's apartment and there was blood on the defendant's shirt. It was testified that his shirt was in his trousers when he was struck in the mouth by the police officer, and the blood on the child's garments was there before the defendant was struck by the officer. The foregoing testimony was admissible in support of the charges against the defendant. Where there is a logical connection between different acts, though they constitute a different crime, if such facts help to establish the crime charged they are all admissible. *People* v. *Rappaport,* 364 Ill. 238; *People* v. *Rooney,* 355 id. 613; *People* v. *Doody,* 343 id. 194; *People* v. *Cummings,* 338 id. 636; *People* v. *Pargone,* 327 id. 463; *People* v. *Campbell,* 323 id. 129; *People* v. *McGuirk,* 312 id. 257.

One of the contentions on behalf of the defendant is, that the result of the examination by a physician was per-

mitted to go before the jury, but the cross-examination (to which reference has been made) by which it was sought to show that there was no semen on the clothing of the defendant or that of the little girl, was excluded, and that the defendant was entitled to the negative finding which the cross-examination of the doctor would have shown. There was nothing brought out on the direct examination of the witness that there was an attempted rape of the child. The doctor merely testified that he examined the private organ of the defendant. Absence of semen on the clothing of the defendant and the child would have no tendency to prove that the defendant did not have the child in his apartment or that he did not kidnap her. Whether it had a tendency to show that there was no attempted rape was not pertinent to the issue. The testimony that blood was found on the defendant, under his finger nail, and was uniformly spread on his index fingers, and that there was blood in the child's vagina and on her clothing after she had been with the defendant was competent, not because of the possible disclosure that the defendant took indecent liberties with a child, but because the presence of blood on the clothing and places mentioned supplied a connecting link in the circumstances shown in evidence of the child's detention in the defendant's apartment. As heretofore stated, the blood from the defendant's mouth could not have been communicated to the child's clothing because the blood on the defendant's mouth was the result of his being struck after the child had left the apartment. It is not apparent how the defendant has been prejudiced by the failure to have the doctor's statement that no semen was found on his person or that of the child, admitted in evidence. It merely would have shown or failed to show additional acts of taking indecent liberties with or even an attempted rape of the child, which was not the issue in the case. It would not have been evidence or justified an inference that the testimony of the physician or any other witness was untrue.

It is contended that the exhibition of bloody sheets and clothing in the presence of the jury was error. In *People* v. *Arnold,* 248 Ill. 169, stained cloths and clothing were admitted in evidence, over the objection of the defendant in that case, and were displayed to the jury during the trial. It was held that they were not the evidence of any crime, and had no tendency to prove any fact except that a hemorrhage occurred, which was not in controversy. In the present case it was shown that blood was present on the clothing and persons heretofore mentioned. The sheets and clothing were not admitted in evidence. The facts heretofore related, however, were in evidence, and taken in connection with the confession which the defendant made within a few hours after he was arrested helped to establish the *corpus delicti* as well as connect the defendant with the crime charged. *People* v. *Gillespie, supra; People* v. *Hauck,* 362 Ill. 266; *People* v. *Harrison,* 261 id. 517.

It is contended that even if the confession was voluntary, those parts of it which related to other offenses, should have been deleted. If there can be no separation of the relevant and irrelevant parts the entire confession may go to the jury with proper instructions. (*People* v. *Spencer,* 264 Ill. 124.) There is no complaint of instructions or lack of them, except as to the form of verdict.

It is contended that an instruction or form of verdict should have been given as to each of the counts of the indictment as submitted on behalf of the defendant; that the jury either should have returned a general verdict of not guilty or a verdict which responded to the charges in the particular count on which the verdict was rendered. The defendant submitted forms of verdict as to each count, which were refused. The indictment was in the language of the statute and the court instructed the jury in the same language. The jury were further instructed that if they found the defendant committed the acts of which he was accused, in manner and form as charged in the indictment,

it was their duty to find him guilty, even though they might find that he had been drinking intoxicating liquor at the time in question. The jury were informed what constituted the substance of the offense as charged in each of the two counts and the quantum of proof to establish the *corpus delicti.* The jury were instructed that if they found the defendant guilty of kidnaping it was their duty to fix the penalty.

When a penal statute mentions several acts disjunctively and prescribes that each shall constitute the same offense and is subject to the same punishment, all or any of such acts may be charged conjunctively as constituting a single offense. *People* v. *Langguth,* 347 Ill. 500.

Kidnaping an infant is the offense covered by the statute on which the indictment in this case was founded and it provided that such offense might be committed by two different methods, and only one penalty was provided. The first count alleged one of the methods and the other count alleged the other method. The charges, however, grow out of the same general act of the defendant and they constitute the crime of kidnaping an infant. By the general verdict of the jury the defendant was convicted of that crime. As stated by counsel for the defendant, the general rule is, that where distinct offenses are charged in separate counts of an indictment the jury must either return a general verdict of not guilty, or a verdict which responds to each separate charge in the indictment. (2 Thompson on Trials, (2d ed.) sec. 2640; 16 Corpus Juris, p. 1105.) But where, as in this case, the offense is a single crime, different counts in the indictment may state the offense in as many different ways in as many different counts as the pleader may think necessary. (*Kotter* v. *People,* 150 Ill. 441; *Lyons* v. *People,* 68 id. 271; Joyce on Indictments, (2d ed.) secs. 537, 538.) In *Lyons* v. *People, supra,* we held that where the indictment, in one count, charged the breaking and entering of a car with intent to steal, and in

another count, a stealing at the same time, and the defendant was found guilty generally and a punishment imposed which the law authorized for the offense charged in either count, the verdict must be sustained. In *Herman* v. *People*, 131 Ill. 594, there were several counts in the indictment, some of which were *nolle prossed*. Four counts, however, remained, charging variously a conspiracy by false pretenses to induce a certain female to have illicit, criminal intercourse; a conspiracy to entice and take her away for the purpose of prostitution; a conspiracy to take her away for the purpose of concubinage, in violation of the statute, and another count charging the actual confining of the female against her will for the purpose of prostitution. The jury returned a verdict finding the defendants guilty in manner and form as charged in the indictment. We held that the several counts merely stated in various forms the same transaction, and the counts were not inconsistent with each other; that the defendants might have conspired to do a certain thing and also to have accomplished the purpose of the conspiracy, but, even so, a general verdict was sufficient to sustain the judgment.

The two counts in the indictment in this case are not inconsistent with each other. The defendant was not injuriously affected by the fact that the jury did not specify the particular count on which the verdict was based. (*People* v. *Hein*, 315 Ill. 76, 83; *Herman* v. *People, supra; Lyons* v. *People, supra.*) The failure or refusal to give an instruction is harmless and not ground for reversal where the defendant has not been prejudiced thereby, as where the result would not have been changed if the instruction had been given; where, under the evidence and statement of the defendant, he could not have been prejudiced thereby; where the element of the offense, on the necessity of which the court refused to instruct, was clearly shown; where the defendant's own admission established his guilt, or where the jury could have returned no other verdict. (17 Corpus

Juris, pp. 349, 350.) By the defendant's confession and the other evidence in the case, the defendant was shown to be guilty of the crime of kidnaping an infant.

What has just been said is an answer to the defendant's contention that the prosecution succeeded in obtaining a thirty-year sentence in a case in which the facts, if proved, established only the taking of indecent liberties with an infant, rather than kidnaping. The statute under which the indictment was drawn requires no clearer or stronger proof of kidnaping an infant than that which was submitted in this case. The fact that there may have been evidence of the offense of taking indecent liberties with a child, cannot be made the basis for obtaining a reversal of the judgment upon a verdict of guilty on the charge of kidnaping an infant, in view of the fact that the testimony mentioned helped to establish proof of the crime charged. A man may not, by multiplying his crimes, diminish the volume of competent testimony tending to show his guilt in the case on trial. *People* v. *Lenhardt,* 340 Ill. 538.

There was some conflict in the testimony. The jury saw and heard the witnesses testify. This court was not afforded that opportunity. The weight to be accorded the testimony of the several witnesses was within the province of the jury, and unless this court is convinced that the verdict of the jury is contrary to the weight of the evidence it is not within the sphere of this court to set aside the verdict. *People* v. *Manfucci,* 359 Ill. 69; *People* v. *Kelley,* 330 id. 562.

There is no reversible error in the record. The judgment of the criminal court is affirmed.

*Judgment affirmed.*