(No. 26101.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAM CANINO, Plaintiff in Error.

*Opinion filed June 13, 1941.*

JAMES M. BURKE, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Sam Canino, the defendant, Peter Seritella, Angelo Rodorigo and William Squiller were indicted in the criminal court of Cook county for the crime of robbery while armed with a dangerous weapon. They were tried by a jury and found guilty as charged. Motions for a new trial and in arrest of judgment were overruled. The defendant, Sam Canino, sentenced to imprisonment in the penitentiary for an indeterminate term of one year to life, prosecutes this writ of error for a review of the record.

The robbery occurred about 12:45 in the morning of September 5, 1939, in a tavern operated at 4609 South Wentworth avenue, Chicago, by William Lileikis and Mary, his wife. The complaining witnesses, both of whom were born in Lithuania, experienced great difficulty with the English language. They testified that at the time mentioned three men, including defendant, entered the tavern and announced a "stick-up"; that the men were hatless, used handkerchiefs as masks, and two of them carried guns. They further testified that one of the three, wearing sun glasses in addition to a handkerchief, hit William Lileikis on the head with a gun. Mrs. Lileikis testified that the same person took money and then shot out the lights, whereupon the three men left the tavern. When the complaining witnesses reached the street, they found that two police officers in a squad car had apprehended the three men, together with a

fourth man who had remained outside the tavern. They accused the four men, who were the defendants in the trial court, of having held them up, and none denied the accusation. Upon investigation, William Lileikis discovered that ten dollars had been taken.

Michael F. Harris and John Nolan, the arresting officers, testified for the People that on the morning in question, while driving a squad car, they observed a large Buick automobile parked on the wrong side of the street, facing south, in front of the tavern, its rear license plate obscured by signs attached to the car. They further testified that the defendant, Canino, was looking in the tavern window; that he glanced up and down the street, then suddenly jumped into the car and that, simultaneously, Squiller, Rodorigo and Seritella ran out of the tavern, the last two carrying guns, and leaped into the car, which started south with defendant driving; and that Seritella wore sun glasses, while the other two had handkerchiefs over their faces. The two guns were thrown from the window of the car as the officers forced it to the curb. One of the guns contained seven cartridges, and the other three cartridges and two empty shells. The sun glasses were not found, but a search of the car revealed four handkerchiefs and a spectacle case. The officers also found approximately ten dollars on the four men. After the men were lined up in the street with their hands raised, the complaining witnesses identified them.

The defendants, testifying in their own behalf, denied all connection with the robbery. They asserted that they had been passing the tavern when arrested, had not been out of the car, did not possess guns, and had not worn handkerchiefs over their faces. Seritella admitted a previous imprisonment in the penitentiary. The only other witness was Lucille Squiller, a sister of William Squiller, who testified that William Lileikis had shown uncertainty at a preliminary hearing as to the identity of any of the defendants.

The defendant, Sam Canino, suggests no error of law in the trial court, but seeks a reversal solely upon the ground that the evidence is insufficient to support his conviction. He attacks as doubtful and contradictory the testimony of the complaining witnesses with reference to his having been in the tavern. In particular, defendant points out that William Lileikis, on one occasion, mentioned the four defendants as having been present in the tavern, and stated, in one instance, that defendant did, and, in another, that he did not have a gun. He directs attention to testimony of the officers, to the effect that prior to the trial the complaining witnesses did not specifically designate defendant as one of the men in the tavern. Where no prejudicial error appears in the record, a judgment of conviction will not be disturbed unless the verdict is palpably contrary to the weight of the evidence, or the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. (*People* v. *Diekelmann,* 367 Ill. 372; *People* v. *Hicks,* 362 id. 238; *People* v. *Manfucci,* 359 id. 69.) The law has committed to the jury the determination of the credibility of the witnesses and of the weight to be accorded to their testimony, and where the evidence is merely conflicting this court will not substitute its judgment for that of the jury. (*People* v. *Deal,* 361 Ill. 225; *People* v. *Abelsky,* 359 id. 387; *People* v. *Kubish,* 357 id. 531.) Although the complaining witnesses admittedly were confused in some respects by the excitement, violence and shooting at the time of the robbery, and found difficulty with the English language in testifying, their testimony is clear and in complete accord upon the essential details of the crime. These details include the fact that the robbery occurred and that defendant was present. No other construction can be given to their identification at the time of the arrest, and defendant failed to deny their accusation. The discrepancies urged by defendant present simply a question of the credibility of the witnesses and the weight to be given to their testimony,

upon which the jury has already passed. Moreover, defendant's participation in the robbery was established independently of his identification by the complaining witnesses. The impartial testimony of the police officers shows beyond controversy that, when first observed, defendant was acting as a lookout; that he leaped into the Buick simultaneously with the precipitate exit of the masked and armed men from the tavern, and that he was apprehended with them in an attempt to escape from the scene of the crime. The question whether he was in the tavern, therefore, is of little consequence, since he was aiding, abetting and assisting in the common criminal design and is punishable as a principal for the acts of his confederates. (Ill. Rev. Stat. 1939, chap. 38, pars. 582, 583, p. 1191; *People* v. *Logan,* 358 Ill. 64; *People* v. *Billburg,* 314 id. 182.) The jury, having observed the conduct and demeanor of the witnesses, could judge better than a reviewing tribunal their credibility and the weight of their testimony. The verdict, therefore, will not be disturbed by this court.

The conviction of the defendant is amply supported by the evidence, and the judgment of the criminal court of Cook county is affirmed.