THE STATE v. EDWARD MILLER, Appellant.—14 S. W. (2d) 621.

Division Two, March 2, 1929.

*Stratton Shartel*, Attorney-General, and *David P. Janes*, Assistant Attorney-General, for respondent.

HENWOOD, C.—An information was filed in the Circuit Court of the City of St. Louis, by which the defendant was charged (under

Sec. 3270, R. S. 1919) with forcibly taking and carrying away a child under the age of twelve years, with the intent to detain and conceal said child from its parent. He was convicted and sentenced to imprisonment in the penitentiary for six years, and then, in due course, perfected this appeal.

Constance Fuller, the victim of the alleged offense, was less than seven years of age at the time in question. At the trial, about one year later, she was called to the witness stand, but, failing to qualify as to the meaning of the oath of a witness, she was not permitted to testify.

According to the evidence offered by the State, this child lived with her mother, a widow, and her brother and sister, at 4437 Pennsylvania Avenue in the City of St. Louis. She and her sister, Marcella Fuller, ten years of age, and their playmate, Dolores Gerlach, eleven years of age, attended the St. Thomas School, located about four blocks from the Fuller home. During the noon recess (about 12:30 P. M.), on November 3, 1926, while these three little girls were returning from their homes to school, a man in a Ford coupe automobile stopped them and inquired as to where he might find Mother Devlin. After Dolores told him that Mother Devlin had been transferred to St. Charles, Missouri, he asked them to get into his car and ride to the school building. When they declined his invitation to ride, he grabbed Constance, pulled her into the car, and drove away. She was crying, and he had his hand over her mouth. Marcella and Dolores followed the car for a short distance, shouting to the man to stop the car, and then Marcella ran back to her home and told her mother what had happened. Geraldine Theiss, another school girl, fifteen years of age, saw Constance in the car, and wrote down the license number of the car (492726), which was reported to the Fuller family and police headquarters. About two hours later, Charles Wiegand, an automobile salesman, saw a man driving away from a quarry and dumping ground at 5400 Broadway in a Ford coupe, found Constance there crying, and took her to her home. "Her legs were all scratched—and there were a couple of spots, white spots, on her panties," and she was in a "hysterical condition," at that time. The police officers located the owner of the Ford coupe, John Yozits, through the license number (492726), and information obtained from him led to the arrest of the defendant. Yozits testified that the defendant borrowed his Ford coupe about 8:30 in the morning and did not return it until sometime in the afternoon, on November 3, 1926. Marcella Fuller, Dolores Gerlach and Geraldine Theiss positively identified the defendant, at the trial, as the man who took Constance Fuller away in the Ford coupe on that day. Mrs. Marie Fuller, Constance Fuller's mother, and three police officers, testified that, on November 4, 1926, the day of the de-

fendant's arrest, without any abuse, coercion, threats or promises on the part of the officers, the defendant dictated, and then read and signed, the following statement (State's Exhibit A), which was offered in evidence:

"DEPARTMENT OF POLICE
City of St. Louis

November 4th, 1926.

District Secr. Serv. Bureau A

Subject Statement made by Edward Miller.

"My name is Edward Miller. I am twenty-one years old, born in Mo. Laborer, and reside at 4631 Louisiana Ave. and make the following statement of my own free will, without any threats or promises.

"About 8 o'clock A. M., November 3, 1926, I went to the Valley Motor Car Co., located at 3664 Gravois Ave., where I formerly worked, and borrowed a Ford Coupe from John Yozits, who is employed there, telling him that I wanted to take a girl to work, and after getting the car from Yozits I drove around through South St. Louis, stopping at several saloons, where I drank whiskey, and about 12 o'clock noon, while driving along at Minnesota and Chariton St. I stopped the car, after seeing three young girls walking north on the east side of Minnesota, whom I stopped and asked them where a certain store was which I cannot recall, I then, while seated in the car, asked one of the three girls to get in the car and show me where the store was, after one of the girls got close to the car having her hand on the seat I grabbed her hand and assisted her in the car, I then drove north on Minnesota Ave. with the girl, to Meramec Street, east to Nebraska Ave. then south to Broadway, to Bates Street, over to Michigan Ave., then south into the county as far as Cliff Cave, where I stopped on the hill, then after stopping while in the car I asked to see and open her pants. She hesitated and started to cry, whereupon I told her I would take her back to school if she would do as I asked to do. I then tried to unbutton her pants and could not find the buttons. She then unbuttoned them herself, after which I then put my head between her legs and kissed her privates several times, and also put my hand on her privates and played with it. About that time some man came along and drove a short distance and stopped again, repeating the same thing, and at the same time playing with my private until I had a discharge, giving me the same satisfaction as if I had an intercourse with a woman. After all this occurred I drove back to the city, where I made several stops, intending to repeat the above act, but was scared by people passing along the street. I finally drove to a quarry located in the 5000 block on Pennsylvania Ave., where I asked the girl to get out of the car, which she did. I then

asked her to lay on the ground, but she sat down. I then pushed her over and raised her dress and pulled down her pants, taking my privates out which was hard and put same between her legs for several minutes, rubbing same up and down alongside of her privates until I had a small discharge. After this happened I got up and jumped into the car and drove away, leaving the girl there.

Signed

EDW. MILLER.

Witnesses

Det. Arthur Egenriether

"   Arthur E. Sept

"   A. R. Borlinghaus

"   Sergt. Hy. Sieckhaus."

The defendant, testifying in his own behalf, denied any connection with the offense charged. He admitted that he signed the statement above quoted, but denied that he made the statement. He said the officers "wrote it" and he "had to sign it;" that one of the officers "pulled his gun out of his holster," and said: "Either sign it, or else;" that the statement was not true; and that he was "down town, looking for work at the Post-Dispatch quarter after twelve," on the day in question.

Two witnesses, Dr. Willard J. Hans and Rev. Bernard J. Benton, testified to the defendant's previous good reputation for morality.

I. The defendant's challenge of the sufficiency of the evidence cannot be seriously considered, in the face of the facts and circumstances developed at the trial of this case. Obviously, the jury believed the testimony of the State's witnesses, which, if true, leaves no room for substantial doubt of the defendant's guilt. Moreover, the jury were fully warranted in finding that the defendant voluntarily made and signed the written confession of his guilt, which was offered in evidence, if they did so find. The demurrers to the evidence were properly overruled.

II. It is said that "the court erred in failing to instruct the jury on circumstantial evidence." As above shown, two witnesses testified that they saw the defendant forcibly take into the Ford coupe and carry away the child in question, and another witness testified that she saw the defendant while he was engaged in forcibly carrying away the child. There was also positive proof that the defendant voluntarily confessed that he committed this crime. It is only when the State relies upon circumstantial evidence alone that an instruc-

tion on the legal effect of such evidence is required. The defendant did not request that such an instruction be given, and he is not in a position to complain of the court's failure to instruct the jury on a collateral matter. [State v. Silvey (Mo. Sup.), 296 S. W. 128.]

III. The other assignments of error, contained in the motion for a new trial, relate to the admission and exclusion of evidence, and the failure of the court to instruct the jury "on all phases of the law applicable to the case." These assignments are general in character, and, therefore, present nothing for our review. [Laws 1925, p. 198; State v. Standifer, 316 Mo. 49, 289 S. W. 856.]

The information and the verdict are sufficient in form and substance, and it is our conclusion that the defendant was accorded a fair and impartial trial. The judgment is affirmed. *Higbee* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. *White, J.,* concurs in separate opinion; *Walker, J.,* concurs; *Blair, P. J.,* dissents in separate opinion.

WHITE, J. (concurring).—I concur in the conclusion reached by HENWOOD, C., in affirming the judgment.

Section 3270, Revised Statutes 1919, provides that:

"Every person who shall maliciously, forcibly or fraudulently lead, take or carry away, or decoy or entice away any child under the age of twelve years, with the intent to detain or conceal such child from its parent, guardian or other person having the lawful charge of such child, shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding twenty years, or in a county jail not less than six months, or by fine not less than five hundred dollars."

In this case the child, seven years of age, was forcibly taken away and detained for two hours. The kidnapping statute, number 3268, precedes this. The statute under consideration was evidently intended to cover any case of taking away and detaining, which would not come within the terms of the kidnapping statute. This section, number 3270, places no limit of time upon the detention or concealment, nor does it require that the child taken away shall be detained. It requires only that the child shall be taken away with the *intent* to detain it. That intent is manifest in this case because the child was in fact detained from her parent for two hours. The only intent required to be proven in the terms of the statute, as applied to this case, is the intent to detain. The child was returning home

from school at the time the defendant took her in his automobile, as described in the evidence.

The defendant fell short of accomplishing the most heinous crime, but was guilty of two or more crimes of a less flagrant nature. The only penalty which really reaches the case, adequate to meet the offense, is provided in Section 3270.

The Legislature in enacting this section probably had in mind just such a case as this, or something similar to it, which would not fall within the terms of the kidnapping statute. But if they did not, this is a *species* of crime which comes within the *genus* defined in the section, and is covered by it. [State v. Morro, 313 Mo. l. c. 122-123.]

For these reasons I concur.

BLAIR, P. J. (dissenting).—I am unable to concur in the majority opinion because I think the proof is not sufficient to sustain a conviction under Section 3270, Revised Statutes 1919. To violate that statute the child must have been taken away, etc., "with the intent to detain or conceal such child from its parent," etc. In other words, the child must have been taken away *for the purpose* of detaining or concealing such child from its parent, guardian or other person lawfully in charge of the child, and not for some other purpose. To sustain a conviction under Section 3270, the evidence must tend to prove that appellant took away the child with the specific intent denounced by said section and not with some other and different intent.

Appellant filed no brief in this court. The record shows that he offered a demurrer at the close of all the evidence and assigned the overruling thereof as error in his motion for new trial. The sufficiency of the evidence is therefore for our consideration. The majority opinion disposes of this assignment with the following:

"The defendant's challenge of the sufficiency of the evidence cannot be seriously considered, in the face of the facts and circumstances developed at the trial of this case. Obviously, the jury believed the testimony of the State's witnesses, which, if true, leaves no room for substantial doubt of the defendant's guilt."

The assignment cannot properly be disposed of in such summary manner. There is no direct proof in the record concerning the intent of appellant in taking away the child. His intent may properly be inferred from all the facts and circumstances. [State v. Simon (Mo. Sup.), 295 S. W. 1076, l. c. 1079.]

The circumstances in this case point clearly to an intent or purpose on the part of appellant to ravish the little girl or to accomplish just what appellant said he actually did, to-wit, to gratify his sexual

passion in an unnatural way and, when such gratification was accomplished, to release her. There is not a single fact stated in the opinion which points to an intent or purpose on appellant's part "to detain or conceal" the little girl from her parents longer than was incidental to the accomplishment of that purpose.

Of course, there was temporary detention and concealment, such as would be necessary before appellant could accomplish his lascivious purpose; but such detention and concealment were purely incidental and did not characterize the intention with which appellant took the child. Such detention and concealment were directed against all the world and not particularly against the custody of the parent. Section 3270 denounces an offense against the custody of the parent or guardian and not an offense against the person of the child. It defines an offense closely akin to kidnapping or abduction.

If the evidence had tended to prove that appellant took the child away from her parents with intent to detain or conceal her *and,* at that time and while she was so concealed, intended to do what he said he did do to her or to do any other act with respect to her, regardless of what it was, Section 3270 would have been violated; but not otherwise. The intent to detain or conceal her from her parents or guardian must have been his purpose in whole or in part in taking the child away and it is not sufficient that such detention or concealment was merely incidental to his purpose.

Suppose the proof had been that the child's parents for some reason, good and sufficient or otherwise, had forbidden appellant to see the child or to have anything to do with her, and appellant, because of an excessive and unrestrained fondness for the child, had pulled her into his automobile, just as the evidence shows that he did do, and it had further appeared that he had taken her away and had concealed her from her parents for the innocent purpose of being with her and enjoying her childish prattle or for the purpose of buying her candy or of taking her to a moving picture show or, possibly, of showing her the animals at the zoo, with intent thereafter to return her safely to her parents. Would anyone contend that appellant had thereby incurred the penalties of Section 3270 and might be sent to the penitentiary for twenty years for such incidental detention or concealment. Yet detention or concealment of the child would have been present in that case the same as in the case at bar. The concealment would have been for a different purpose, it is true, but the same intent to conceal would exist in each case; that is, such concealment as would be purely incidental, and in fact essential, to the accomplishment of his purpose in respect to the child.

It is not necessary to determine of what crime appellant was guilty. His act was at least a most aggravated assault. Although appellant's act was unspeakably revolting, he cannot be convicted of a crime, the statutory definition of which does not cover his conduct, merely because the punishment, provided for the violation of that statute, more nearly comports with our ideas of the punishment appropriate to appellant's conduct. We should not permit the revolting circumstances and want of sufficiently severe punishment for the crime actually committed, as provided by existing statutes, to result in the announcement of bad law

I respectfully dissent.