THE STATE v. POSTELL PINKSTON, Appellant.—79 S. W. (2d) 1046.

Division Two, March 5, 1935.

*S. E. Garner* for appellant.

*Roy McKittrick*, Attorney General, and *Wm. W. Barnes*, Assistant Attorney General, for respondent.

TIPTON, P. J.—On the 23rd day of May, 1933, in the Circuit Court of the City of St. Louis, Missouri, the appellant was convicted of murder in the first degree and his punishment fixed at death. He has properly perfected his appeal to this court.

616

No question is raised as to the sufficiency of the evidence to sustain the verdict, therefore, it will not be necessary to state the evidence, other than to say that the appellant was engaged in the commission of robbery during which Willie Frierson was killed.

I.   Complaint is made of the ·closing argument of the State's attorney.   He, in effect, said that Mr. Garner, the appellant's attorney, knows that if this appellant's character were such that he would want·to call it to the jury's attention, he would have produced a witness to testify about it, and then the State could cross-examine the witness.   But he did not do so, because he knew it could not be sustained by the evidence.

The appellant did not put his character in issue.

█   Until a defendant has put his character in evidence the ·State is not permitted to attack it.   The law presumes every man's character to be good.   [State v. Sexton (Mo. App.), 262 S. W. 63.]   A defendant has a right to be tried with that presumption.   No attorney should be allowed to argue about facts not shown in the evidence.   What the circuit attorney was not allowed to do by testimony he did more effectually by asserting as a fact in his official character.   "It is a rule, sustained by the great weight of authority that it is improper for counsel for the prosecution in his argument to comment on the failure of the accused to produce evidence of his good character."   [80 A. L. R. 227; State v. Shipley, 174 Mo. 512, 74 S. W. 612; State v. Sexton, supra; Lowden v. United States (C. C. A.), 149 Fed. 673; Bennett v. State, 86 Ga. 401, 12 S. E. 806, 12 L. R. A. 449, 22 Am. St. Rep. 465; Fletcher v. State, 49 Ind. 124, 19 Am. Rep. 673; State v. Williams, 122 Iowa, 115, 97 N. W. 992; State v. Scott, 194 Iowa, 777, 190 N. W. 370; State v. Upham, 38 Me. 261; People v. Evans,·72 Mich. 367, 40 N. W. 473; People v. Boske, 221 Mich. 129, 190 N. W. 656; Cline v. State (Tex. Cr. App.), 71 S. W. 23; Hudson v. State (Del.), 156 Atl. 881, 80 A. L. R. 219; State v. Lentz, 184 Mo. 223, 83 S. W. 970.]

In State v. Shipley, supra, the defendant's counsel, in his argument said:   "The defendant is a man of good character, not a witness has been produced to show his was not good."   In the closing argument the prosecuting attorney said:   "Fred Shipley, the defendant, ·had a right to prove his good character, and gentlemen of the jury, the reason he did not bring them in is because he knew they would not so testify."   In passing on this assignment of error we said:

"No evidence had been offered on the character of the defendant. The prosecuting attorney told the jury in effect that the defendant had not brought his neighbors in to testify as to his good character because he knew they would not do so, and it was tantamount to asserting that defendant was a man of *bad* character.   The apology made in the record is that defendant said he was of good character,

and no witness had testified against his character. We do not think this palliates the breech of the prosecuting attorney. If there was no evidence on character (and there was none) he should have objected to the statement, and requested that the defendant's counsel be required to keep within the evidence. But instead of so doing, he made no objection at the time, and then sought in the closing argument to offset it by the unsupported statement that defendant was a man of bad character and knew it, and did not dare to produce his neighbors. It is a cardinal rule of criminal procedure that until a defendant has put his character in evidence the State is not permitted to attack it."

The State contends the remarks made in the closing argument are not erroneous because they were made in reply to the remarks and suggestions made by the appellant's counsel in addressing the jury. If the statements made were in reply to the remarks made by appellant's counsel then the State is correct in its contention. We have so ruled. [State v. Harmon, 317 Mo. 354, 296 S. W. 397; State v. Smith, 300 S. W. 1081; State v. Linders, 299 Mo. 671, 253 S. W. 716.]

We have carefully examined the argument of appellant's attorney, but failed to find in it any reference to appellant's character. The gist of the argument was that before it could be murder in the first degree the evidence must show premeditation and deliberation, however, if a homicide was committed in the perpetration of robbery then the law presumes premeditation and deliberation; that this appellant did not go to the place where the deceased was killed with the design to kill Willie Frierson. Counsel said: "Because this boy was with a gang of other boys that were in devilment got himself into a situation where he is charged with this offense," and this appellant was hanged, would the State of Missouri be in any better condition the next day after he was hanged?" Again he said: "What great accomplishment would our noble State be able to look back upon a number of years from today, upon your act, from its history, that because a boy just barely grown, got mixed up with other boys and got off in a little devilment at a time that they thought maybe it was not so serious, got into it and this condition arose and he is here —and the State of Missouri then says, we took that boy out and showed him how we felt about it, we simply put a rope on his neck— if that be done, would that be a wonderful thing to boast about? Would that be something great we could put in our history? I don't think so."

We do not agree with the State that the argument of the assistant circuit attorney was in reply to the argument of the appellant's counsel. The appellant did not discuss the question of his character. The reference of the State's attorney to appellant's character was prejudicial error.

II. The appellant's next assignment of error is as follows: "The Court erred in allowing the prosecutor to pledge the prospective jurors to a death penalty punishment in this case in the event of a conviction, in that it denied the defendant the benefit of the discretion of the jurors to assess the life imprisonment sentence, and it was an invasion upon the powers of the jury."

The prospective jurors were examined at length as to whether or not they *would* assess the death penalty if the evidence warranted it. It is impossible to set out in this opinion in full this examination as shown by 119 pages of the bill of exceptions.

One of the typical questions, among many others that were asked the prospective jurors on their *voir dire* examination was: "If you were accepted as a juror in this case, if you believe and found from the evidence beyond a reasonable doubt that the defendant was guilty, if you believe from that evidence that the death penalty was proper penalty to follow a finding of guilty, would you vote for it?"

Several of the prospective jurors stated that before they could answer that question they wanted to hear the evidence. The jurors' statement certainly indicated that they thought the State's attorney was trying to get them to state in advance what their verdict would be under certain contingencies. An attorney should not, in advance, ask a juror to speculate upon what he would do, and how his verdict might be influenced by certain contingencies that may later arise in the trial. [Keegan v. Kavanaugh, 62 Mo. 230; State v. Tally, 22 S. W. (2d) 787.]

In State v. Tally, supra, l. c. 788, we said:

"In examination of the jury panel on the *voir dire*, defendant's attorney, Mr. Munger, asked one juror, Gaty, this question: 'Suppose 11 of the jury think the defendant is guilty, and be satisfied with his guilt beyond a reasonable doubt, and you had doubt whether he was guilty, what would you do then?' Objection to this question was sustained and defendant's counsel asked whether, under the circumstances, the juror would stand by his conviction, or would he allow the others to influence him. An objection to this question was sustained by the court. The appellant assigns error to those rulings.

"The trial court is vested with a large discretion in allowing examination of prospective jurors as to their qualifications. A juror is sworn and instructed to decide the issues according to the law and the evidence. *Counsel may not, in advance, ask him to speculate upon what he might do, and how his verdict might be influenced by certain contingencies that may arise later.* His view of the evidence and the instruction may be influenced by the reasoning of his associates and by the argument of counsel, and there is no objection to that. The only thing required is that he reach a conclusion which

is satisfactory to him. Such questions are therefore improper.'' (Italics ours.)

Section 3669, Revised Statutes 1929, provides as follows:

''Persons whose opinions are such as to preclude them from finding any defendant guilty of an offense punishable with death, shall be ineligible to serve as jurors on the trial of an indictment or information charging any such offense, unless such disqualification is waived by the representative of the State when selecting the jury in any such case.''

If a prospective juror's opinion were such that would preclude him from assessing the death penalty in a capital case, then he would be disqualified as a juror in that case. It makes no difference on what he bases that opinion. It may be based on religious or conscientious scruples, or the fact that the juror was a friend of the defendant or his family or that he had some animosity toward the deceased, or the prosecuting attorney.

The trial court is vested with a large discretion in allowing examination of prospective jurors to discover their opinions. We are of the opinion that the ends of justice in this case would be better fulfilled if the examination of prospective jurors had been limited to ascertaining whether the juror had such an opinion, as would preclude him from returning a verdict with the death penalty and that the State's attorney had no right to ask the prospectiv' juror what would be his verdict in event certain contingencies should arise.

III. The witness, Courtjohn, a police officer, qualified as an expert in the identification of firearms and fingerprint work. A revolver had been identified as belonging to the appellant. This witness took this revolver and fired a bullet from it into a barrel of water so that the markings on the bullet could be compared with the markings on the bullet taken from the body of the deceased. This witness testified that both of these bullets were shorter than those which should have been used in the gun, and on that account there were no rifle marks on the bullets. He, therefore, could not say whether the bullet taken from the deceased's body had been fired from the gun belonging to this appellant. Appellant assigns as error the admission of this testimony, and relies upon the case of State v. Porter, 207 S. W. 774, 276 Mo. 387, which holds that if the *corpus delicti* is admitted, the identity of the deceased is known, and the fatal character of the wound has been fully shown, then the exhibition of bloody garments worn by the deceased when killed should not be admitted in evidence, for the reason it might tend to inflame the jury.

In the case at bar, the State was trying to prove that the appellant fired the fatal shot. If we understand the appellant's position

correctly, the alleged error is that this witness failed to state that in his opinion the two bullets were fired from the same gun. The appellant does not claim it would have been error if the witness had testified that the bullet taken from the body of the deceased had been fired from the appellant's gun. We do not see how the appellant was harmed by this testimony, in fact, it might be said that it was to his benefit. There was no showing that the bullet taken from the body of deceased had any blood on it. We find nothing in this evidence that would tend to inflame the jury and hold that it was not error to have admitted it.

On account of the improper argument of the State's counsel, and the improper questions asked the prospective jurors on *voir dire* examination, this case is reversed and remanded for a new trial. It is so ordered. All concur.