THE STATE v. IRVIN HOFFMAN, Appellant.—125 S. W. (2d) 55.

Division Two, February 21, 1939.

*Philip A. Foley* for appellant.

*Roy McKittrick,* Attorney General, and *Olliver W. Nolen,* Assistant Attorney General, for respondent.

WESTHUES, C.—Appellant was tried under an indictment for a violation of Section 4022, Revised Statutes 1929 (Mo. Stat. Ann., p. 2828). He was convicted and sentenced to two years' imprisonment in the penitentiary, whereupon he appealed. Section 4022, supra, reads as follows:

"Every person who shall maliciously, forcibly or fraudulently lead, take or carry away or decoy or entice away any child under the age of twelve years, with the intent to detain or conceal such child from its parent, guardian or other person having the lawful charge of such child, shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding twenty years, or in a county jail not less than six months, or by fine not less than five hundred dollars."

The State's evidence disclosed the following: On February 2, 1937, at about 3:30 P. M., Betty Jean Schneider and Doris Shoe-

make, ages about nine and ten years, and other children were on their way home from school. They were walking north on Spoede Road in St. Louis County, Missouri. A car passed them and stopped some distance north, where a man, identified as appellant, got out. His actions seemed to indicate that he was working on the engine of the car. When the two girls, above named, reached the point in the road where the car was, appellant walked toward them. He attempted to catch Doris Shoemake, but she ran and eluded him. He then pursued Betty Jean Schneider, picked her up and placed her in the car saying: "Get in there." Betty Jean's school books were scattered along the road. Appellant then started to drive away. A Mr. Piotraschke, a deputy constable of the county, was driving north on this road at the time and was approaching the point where the above related happenings occurred. His suspicions were aroused and he sounded the siren on his car and attempted to compel the appellant to stop by forcing him off the road. While this was going on Betty Jean jumped out of appellant's car and escaped. Appellant fled with the constable in close pursuit. After a chase over various roads, the constable, with the aid of other officers who joined in the race, apprehended appellant at a street crossing where cars were waiting for a stop light to change in their favor. The two children, above named, were witnesses for the State and related what occurred at the time. Each identified appellant. The record disclosed that Betty Jean Schneider was asked questions concerning the condition of appellant's clothing. She testified that his trousers were down. When pressed for further and definite answers she began to cry and the questioning ceased. Doris Shoemake was also questioned along the same line, and while her testimony was more definite, many questions remained unanswered. The facts elicited, while meagre, clearly indicated that appellant's intentions were licentious. Appellant offered no evidence and on this appeal only two points were briefed.

Appellant's principal contention is, that the evidence was insufficient to sustain a conviction under Section 4022, supra. Appellant in his brief states:

"Not one scintilla of the testimony indicated this defendant's specific intent to do any of the acts denounced by Section 4022, R. S. Mo., 1929. Where a SPECIFIC INTENT is necessary, as in the instant case, the existence of such an intent cannot be implied as a matter of law from the doing of an act so as to throw the burden of negativing it upon the defendant, but must be proved by the State as a matter of fact. . . .

"To violate the Statute, the child must have been *taken away* with the intent to *detain* or *conceal* such child *from its parent*, guardian, or person lawfully in charge of the child, and *for that purpose* only, and *no other*."

The above section was considered by this court in State v. Miller, 322 Mo. 210, 14 S. W. (2d) 621. In that case the defendant, Miller, forced a young girl under seven years of age into his car, while the child was on her way home from school, in the city of St. Louis. Miller took the child to a quarry, a rather secluded spot, and detained her for about two hours. The proof in that case showed beyond doubt that Miller's intentions in taking the child were for the purpose of taking indecent liberties with her. This court sustained the conviction. Judge HENWOOD, then a Commissioner, wrote the principal opinion which was concurred in by HIGBEE and DAVIS, Commissioners; WALKER and WHITE, Judges. Judge WHITE concurred in a separate opinion. BLAIR, P. J., wrote a dissenting opinion. In Judge WHITE's concurring opinion we find the following:

"In this case the child, seven years of age, was forcibly taken away and detained for two hours. The kidnaping statute, Section 3268, precedes this. The statute under consideration was evidently intended to cover any case of taking away and detaining, which would not come within the terms of the kidnaping statute. This section, No. 3270, places no limit of time upon the detention or concealment, nor does it require that the child taken away shall be detained. It requires only that the child shall be taken away with the *intent* to detain it. That intent is manifest in this case because the child was in fact detained from her parents for two hours. The only intent required to be proven in the terms of the statute, as applied to this case, is the intent to detain. The child was returning home from school at the time the defendant took her in his automobile, as described in the evidence."

After due consideration we feel that Judge WHITE in his concurring opinion reached the correct conclusion. We are fortified in this by the case of People v. Diekelmann (1937), 367 Ill. 372, 11 N. E. (2d) 420, where a conviction was sustained under a statute similar to our statute. The facts here, strange to say, are almost identical. As to appellant's contention, that the evidence to sustain a conviction must show 'an intent to conceal such child from its parents, and for that purpose only, and no other,' the Illinois Supreme Court in the above case answered as follows:

"What has just been said is an answer to the defendant's contention that the prosecution succeeded in obtaining a thirty year sentence in a case in which the facts, if proved, established only the taking of indecent liberties with an infant, rather than kidnaping. The statute under which the indictment was drawn requires no clearer or stronger proof of kidnaping an infant than that which was submitted in this case. The fact that there may have been evidence of the offense of taking indecent liberties with a child cannot be made the basis for obtaining a reversal of the judgment upon a verdict of guilty on the charge of kidnaping an infant, in

view of the fact that the testimony mentioned helped to establish proof of the crime charged. A man may not, by multiplying his crimes, diminish the volume of competent testimony tending to show his guilt in the case on trial. [People v. Lenhardt, 340 Ill. 538, 173 N. E. 155.]''

An appellate court of California made a similar ruling on a similar state of facts and under a similar statute in the case of People v. Kocalis, 35 Pac. (2d) 584, where the court said:

"The evidence, however, was sufficient to justify the conclusion of the jurors that appellant took and enticed these three children with intent to detain and conceal each of them from its parent or guardian. The fact that she released each of them after she had accomplished her felonious purpose in no way detracts from the force or effect of the evidence of such intent."

In the Illinois case, the defendant, after detaining the child for several hours, sent her home, which was only a short distance from the defendant's apartment where she had been detained. And so in the California case the children were released so they could go home. The law therefore seems to be that the crime is complete when the child is taken in custody by a defendant under circumstances as proven in this case. Such a ruling does not seem to us unreasonable. The defendant in the case before us forcibly placed Betty Jean Schneider in his car and was in the act of taking her away when the constable interfered. The defendant had the child under his control. That control was of short duration only because of the timely appearance of the deputy constable. We hold that the evidence was sufficient to sustain the conviction.

Appellant also complained that the trial court refused to permit his counsel to ask the panel of jurors, upon their *voir dire* examination, if they would require the State to prove every element of the offense charged beyond a reasonable doubt. We have carefully read the discussion between the trial judge and the attorney for the defendant, and find that the trial court sustained objections to the form of the questions asked, but did not prohibit the attorney from questioning the jurors on this point when the questions were in proper form. Note the form of the following question:

"MR. FOLEY: Now, would you require the State to prove every element of the charge here to your satisfaction beyond a reasonable doubt? In other words, if you had a doubt in your mind as to any element in the case that had not been proven beyond a reasonable doubt, would you give the defendant the benefit of that doubt and acquit him?"

An objection to that question was sustained, and, after some discussion between the attorneys and the court, the court said:

"THE COURT: Of course, you have a right to interrogate them as to whether or not they will follow the instructions of the Court

and not convict the defendant unless they believe him guilty beyond a reasonable doubt. You attempted to state the law, and the Prosecutor objected to your method of your question.

"MR. FOLEY: Isn't my statement of the law correct, your Honor?

"THE COURT: Well, it may be correct, but I doubt if the jury would understand what you mean by all the elements. It may be developed very easily. You may interrogate further."

It is evident that the trial court was of the opinion that the jurors did not understand what was meant by "every element of the charge," and the court indicated that the attorney could make further inquiry if he would explain to the jurors what was meant. We therefore hold that the trial court did not unduly limit the inquiry. The governing rule is thus stated in 35 Corpus Juris, 389, section 437:

"The extent to which parties should be allowed to go in examining jurors as to their qualifications cannot well be governed by any fixed rules. The examination is conducted under the supervision and direction of the trial court, and the nature and extent of the examination and what questions may or may not be answered must necessarily be left largely to the sound discretion of the court, the exercise of which will not be interfered with unless clearly abused."

We have examined the record proper and find it free from error. The judgment is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.