Joseph J. SMITH, Plaintiff-Respondent,

v.

Hobart NICKELS, Defendant-Appellant,

and

Joseph Johnson, Defendant.

No. 31558.

St. Louis Court of Appeals.

Missouri.

April 20, 1965.

Motion for Rehearing or for Transfer to Supreme Court Denied May 14, 1965.

Application to Transfer Denied June 14, 1965.

Moser, Marsalek, Carpenter, Cleary & Jaeckel, F. X. Cleary, F. Douglas O'Leary, St. Louis, for defendant-appellant.

James F. Koester, St. Louis, for plaintiff-respondent.

J. P. MORGAN, Special Commissioner.

Plaintiff brought this action against defendants to recover damages resulting from a collision involving three automobiles driven by each of them. Defendant Johnson was in default and did not appear at the trial, and the jury verdict was against him in the amount of $10,000 but in favor of defendant Nickels. This appeal was taken from the trial court's action in granting plaintiff a new trial based solely on alleged errors during *voir dire*.

The partial transcript submitted does not include any portion of the evidence and it is agreed that the merits of the appeal must be resolved from the following dialogue. With Mr. Cleary speaking for defendant Nickels and Mr. Koester for plaintiff, the questions and objections were:

"Mr. Cleary: (continuing) Now may I ask—thank you, sir—may I ask all of you members of the panel if you were selected to—as a group, one of the 12 to try this case, would any of you have any hesitancy in holding my client blameless, finding in his favor, if you felt that he was not responsible for this accident?

"Mr. Koester: Your Honor, I'm going to object to that question in that it is an attempt to commit the jury to a type of a verdict without first giving them an opportunity to hear the evidence. I think that it's asking them to make an opinion—give an opinion committing themselves at this time without hearing the evidence.

"The Court: Overruled.

"Mr. Cleary: (continuing) Would any of you hesitate to find in favor of my client if you felt that my client wasn't to blame for this accident?

"(Thereupon the following took place at the bench without the hearing of the jury panel:)

"Mr. Koester: At this time I will renew my objection to the additionally given interrogation by Mr. Cleary and ask the Court to sustain my objection, and I'll ask the Court to instruct the jury to disregard that question because it is an attempt to get a commitment from the jury prior to the time that they have an opportunity to hear the evidence.

"The Court: Overruled."

Appellant's contentions the inquiry was justified may be generally summarized: (1) "It is a matter of common knowledge (or, at least some of us believe) that a certain number of persons selected for jury duty are of the erroneous opinion that a person who is injured may recover in a case irrespective of the fault of defendant", (2) With the amount sued for having been mentioned, and in view of the non-appearance of the co-defendant, it became necessary to ascertain the juror's "feeling toward a case of this kind," and "to determine whether any juror had a misunderstanding or mistaken belief concerning the liability of the defendant who did appear," and (3) The questions did not attempt to commit the jury or obtain an assurance they would find in his favor. The debatable opinion expressed in the first point is immaterial and the merit of point two should be conceded; thus, leaving the sole question in point three as to the propriety of the questions as asked.

■ Certainly the trial of conflicting causes before a fair and impartial jury is essential to justice. As stated in Kendall v. Prudential Life Ins. Co. of America, Mo., 327 S.W.2d 174, 177, "'* * * The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to a trial by jury * * *.'" Research has

failed to suggest any distinction between civil and criminal cases. Securing such a jury, however, is not a matter of absolutes and the right to a fair trial is deemed satisfied where the jury panel has been properly tested on *voir dire* and is otherwise legally constituted. Fundamentally, of course, whether a juror is fair and impartial lies peculiarly in the mind and heart of the individual juror. Whatever lurking prejudice he might have in a particular instance may well be exposed only through psychological analysis. Suffice it to say that such a personalized approach is not within the province of the courts and the practical administration of justice.

■ Such limitations do, however, suggest that *voir dire* examination not be unduly restricted. National Bank of Rolla v. Romine, 154 Mo.App. 624, 136 S.W. 21; State v. Goffstein, 342 Mo. 499, 116 S.W. 2d 65. However, as with any right it must be curtailed at that point wherein it denies an opponent the same right. In fact, it should be liberally permitted where calculated to *expose* prejudice; conversely, where it is calculated to *create* prejudice, it should be denied. In this context, difficulty is frequently experienced in the case of questions having a dual and ambivalent character in that they may, arguably, tend to expose or to create prejudice depending on the subjective viewpoint. An established limitation prevents those questions tending to commit the prospective juror to a course of action, or asking that he speculate what his reaction might be in such manner that he might not feel free to react otherwise. 31 Am.Jur., Jury, Sec. 141.

A late and rather obvious infringement of the rule is found in State v. Katz Drug Company, Mo., 352 S.W.2d 678. The prosecutor outlined facts to be proven and concluded with " '* * * if the Court instructs you that that is a violation of the law, will you convict?' " The Court said, "This was an improper attempt to commit jurors before they had heard evidence, instructions of the court or argument of

counsel. As we said in State v. Heickert, Mo.Sup., 217 S.W.2d 561, 562: '(C)ounsel has no right on *voir dire* to cause the prospective jurors to pledge or speculate as to their action in certain contingencies which may later occur or arise during trial. State v. Pinkston, supra (336 Mo. 614, 79 S.W.2d 1046); State v. Ramsey, 355 Mo. 720, 197 S.W.2d 949. The qualified and selected and instructed juror, having been attentive to the argument of counsel and to the reasoning of his fellows, should be free to reach a conclusion satisfactory to him upon the evidence introduced.' "

■ In State v. Pinkston, supra, the prosecutor asked: " '* * * if you believe and found from the evidence beyond a reasonable doubt that the defendant was guilty, if you believe from that evidence that the death penalty was proper penalty to follow a finding of guilty, would you vote for it?' " The question was ruled improper as an attempt to commit the panel. The proper question to reveal the same "frame of mind" without a tinge of commitment would be that approved in State v. Swinburne, Mo., En Banc, 324 S.W.2d 746, 751: " '* * * 'Do you have any moral, conscious (conscientious) or religious scruple which would make it impossible for you to bring in a verdict of death if you were convinced, beyond a reasonable doubt, that such a verdict is fair and just?' * * *' " The comparison emphasizing that even though the information sought may be proper the means of asking may make it improper.

Similar problems have arisen in those cases where it was thought that the damages suffered might justify an award larger than some possible preconceived limit of the prospective juror. In Shepard v. Harris, Mo., 329 S.W.2d 1, counsel advised that the action was based on wrongful death and was for $25,000. The Court approved asking if they had any conscientious scruples against awarding such an amount. In the absence of objection no specific ruling was made, but in Pence v.

Kansas City Laundry Service Company, 332 Mo. 930, 59 S.W.2d 633, 639, asking if they had in mind any fixed amount beyond that which they would not render a verdict drew the comment the examination was "* * * in a manner not to be approved * * *." A question somewhat similar to the instant case arose in Moore v. Ready Mixed Concrete Company, Mo., 329 S.W.2d 14, 21. After suggesting proof of damages in the amount of $300,000, the inquiry was "'* * * if under the court's instructions concerning the law it is shown that we are entitled to recover, would you have any hesitancy in bringing back a verdict that large? * * *'" The Court assumed the question to be improper, but affirmed the trial court's ruling it was not prejudicial because they obviously did not feel committed in that the verdict was for $200,000 plus the fact an instruction was given specifically advising the jury they were not committed to any particular amount mentioned in *voir dire*. See also Goldstein v. Fendelman, Mo., 336 S.W.2d 661, wherein related questions such as, "* * * 'Would you feel that we can't compensate this lady fully because if we do we will come out with a great big verdict?' * * *" or "* * * 'Would you refuse to give her the full amount that she was entitled to because it would mean returning a verdict in a big sum of money?' * * *" were found "* * * improper on *voir dire* because they were argumentative, implying an obligation to return a large verdict for plaintiff before any evidence had been heard. * * *"

Appellant calls attention to Thornton v. Stewart, Mo.App., 240 S.W. 502. The case is not helpful in that the rather "speculative" question was once asked without objection and the court allowed it to be repeated because one of the jurors had previously manifested a prejudice against the type of case to be tried (humanitarian). Although not cited, attention should be called to the case of Albert v. St. Louis Electric Terminal Ry. Co., 192 Mo.App.

665; 179 S.W. 955, following what has been considered as an exception to the application of the rule herein considered, 31 Am.Jur., Jury, Sec. 141, allowing inquiry which side the juror might be inclined to favor if the evidence were equally balanced. A decision in the instant case requires no comment as to the merits of the exception.

This opinion need not be extended with further precedents, but a very comprehensive article and collection of cases on this and other related problems arising during *voir dire* may be found in "Voir Dire—Examination of Jurors" in Volume 29(3), Missouri Law Review.

■ From the reported cases, it can be concluded, subject to some exceptions not herein pertinent, that counsel is given great latitude in seeking out any bias or prejudice. No difficulty is created by interrogation seeking to reveal a "present state of mind," or, dependent on the skill of the interrogator, establishing some basis for anticipating the reaction of the prospective juror to the immediate issues involved. However, when the inquiry includes questions phrased or framed in such manner that they require the one answering to speculate on his own reaction to such an extent that he tends to feel obligated to react in that manner, prejudice can be created. The limitation is not as to the information sought but in the manner of asking.

■ With various types of cases, individuality of counsel and a cross-section of society appearing as veniremen, an area is involved that cannot, nor should it, be standardized. Necessity requires broad discretion in the trial court and should not be interfered with unless clearly abused. State v. Hoffman, 344 Mo. 94, 125 S.W.2d 55; Eickmann v. St. Louis Public Service Company, Mo., 323 S.W.2d 802.

Prior to considering the immediate question, it is to be noted the record does not reveal the presence of any particular conditions such as: a cautionary instruction or failure of the jury to follow the verdict

suggested, Moore v. Ready Mixed Concrete Company, supra; absence of objections, Pence v. Kansas City Laundry Service Company, supra; or, previous manifestation of prejudice, Thornton v. Stewart, supra. By argument it is suggested the questions as asked may be distinguished from that in the Katz Case because specific facts were not set out. This is true, but the impropriety of seeking a commitment may also be premised on a summarized conclusion as to what the evidence will be. State v. Pinkston, supra.

 Do the questions at issue exceed the limits of proper *voir dire*? They first ask the veniremen to assume defendant Nickels has shown an absence of negligence on his part, and then respond to: "* * * would any of you hesitate to find in favor of my client?" An elementary thought could be that error is impossible for after the assumption of no negligence, their duty would be to find in his favor. However, from the questions found prejudicial in the cited cases, this fact generally was present, leaving no issue as to the subject matter, but only the propriety of the phrasing of the questions. It is possible the inquiry was made in such manner that no prejudgments were made. In fact no response at all is shown. Conceivably instances may arise when questions are objectionable by reason of considerations divorced from the actual words employed, as for example where by intonation, expression or emphasis, connotations not normally implicit in the words may be inspired. The words here used are susceptible to such abuse by experienced trial counsel. As known to anyone having actually participated in jury trials, the prejudicial effect, if any, may not be reflected in the printed record. Carter v. Rock Island Bus Lines, 345 Mo. 1170; 139 S.W.2d 458. Only the trial court is in a position to deal with such instances. In sustaining the motion for new trial, the trial court in retrospect must necessarily have resolved that the questions as asked were prejudicial and should not have been permitted.

Being mindful of the broad discretion accorded and the possible import of the questions asked, it cannot be said that such discretion was abused. Your Commissioner recommends that the judgment of the trial court be affirmed.

PER CURIAM.

The foregoing opinion by MORGAN, Special Commissioner, is adopted as the opinion of the court.

Accordingly, judgment of the trial court is affirmed.

RUDDY, P. J., and WOLFE and ANDERSON, JJ., concur.