Orville HANDSHY, Appellant,

v.

NOLTE PETROLEUM COMPANY, a Corporation, Respondent.

No. 52107.

Supreme Court of Missouri, Division No. 2.

Nov. 13, 1967.

Motion for Rehearing or for Transfer to Court En Banc Denied Dec. 11, 1967.

William P. Byrne, Whalen, O'Connor &
Byrne, St. Louis, for appellant.

Heege & Heege, George F. Heege, III,
Clayton, for respondent.

HOLMAN, Judge.

Action for damages in which plaintiff
sought to recover $45,000 for personal in-
juries. A trial resulted in a verdict for
defendant. Plaintiff has appealed.

In a previous trial plaintiff recovered a
judgment. Upon appeal that judgment was
reversed and the case was remanded for a
new trial because of error in an instruc-
tion. Handshy v. Nolte Petroleum Co., Mo.
App., 387 S.W.2d 161.

On December 5, 1959, plaintiff was en-
gaged in the moving business and main-
tained an office in a small room in the
back part of his residence. On that morn-
ing he was in the office shortly after 8
o'clock with an employee, Elvard Izeman.
Plaintiff's wife was not at home and his
four children were asleep upstairs. At
about that time defendant's truck arrived
to make a delivery of fuel oil. The oil
tank was located in the basement with an
intake pipe close to the outside door of
plaintiff's office. Defendant's regular em-
ployee, Eugene Wood, placed the nozzle
in the pipe and started the oil flow. He
left the nozzle in charge of Clifford Black
while he went to the truck and "revved up"
the motor. Black was a new employee and
had not received any instruction as to how
to shut off the hose. The oil started over-
flowing and Black could not stop it. Be-
fore the hose was shut off about five gal-
lons of oil overflowed onto plaintiff's patio,
and there was evidence that some ran

under the door and onto the floor of the office.

Plaintiff who, according to Wood, "appeared mad," came out and either he or Wood swept the oil into a drain. At about that time Wood suggested that there might be some spillage in the basement. Plaintiff had an automatic gas water heater in the basement and was apparently afraid that oil may have spilled and might be ignited by the gas water heater. He immediately went through his office and kitchen to the doorway leading to the basement. As he started down the steps his feet "went out from under him" and he fell down the remaining steps to the basement floor and was injured. A short time later he examined his shoes and found that the soles were "full of oil."

It was shown on cross-examination of plaintiff that he had sustained injuries in three accidents occurring subsequent to the one in question.

Mr. Wood testified that the oil being delivered would not ignite until heated to a temperature of 154° F.; that the mat outside the door was only one-third saturated with oil; that he followed plaintiff into the house and wiped his feet on the dry portion of the mat; that he did not see plaintiff wipe his feet.

Plaintiff's case was submitted upon a required finding of negligence in that "the defendant failed to properly instruct its employee how to shut off the hose." Defendant contended that plaintiff was guilty of contributory negligence and the submission thereof required a finding that plaintiff either "walked through the spilled oil, or failed to wipe his shoes off on the door mat * * *."

The first point briefed by plaintiff is that the court erred in overruling his objection to a question asked the jury panel by defendant's counsel on voir dire examination. The question was as follows: "Mr. Heege: If the law and the evidence shows you Mr. Handshy is not entitled to recover, are there any of you who couldn't give a verdict for the defendant?" Plaintiff's attorney made an objection which was overruled and then the following statement was made: "Mr. Heege: I take it by your silence you could do this."

Plaintiff contends that the ruling was erroneous because it permitted interrogation by defendant's attorney which sought to commit the jurors to a verdict prior to hearing the evidence. It is undoubtedly an established rule in this state that an attorney on voir dire examination may not cause the veniremen to pledge or speculate as to their action in certain contingencies which may later occur during the trial.

In State v. Pinkston, 336 Mo. 614, 79 S.W.2d 1046, 1048, we held it was reversible error to permit the prosecuting attorney to ask the following question: "If you were accepted as a juror in this case, if you believe and found from the evidence beyond a reasonable doubt that the defendant was guilty, if you believe from that evidence that the death penalty was proper penalty to follow a finding of guilty, would you vote for it?" It was held to be reversible error in State v. Katz Drug Co., Mo.Sup., 352 S.W.2d 678, 684, to permit the following question on voir dire examination: "Now, if I prove to your satisfaction and beyond a reasonable doubt that February 22, 1959, was a Sunday, and that the Katz Drug Company at their 8th and Washington store sold goods, wares and merchandise which were not medicines or drugs and not items of immediate necessity, and if the Court instructs you that that is a violation of the law, will you convict?" In ruling the contention the court stated that this "was an improper attempt to commit jurors before they had heard evidence, instructions of the court or argument of counsel." In Smith v. Nickels, Mo.App., 390 S.W.2d 578, the court affirmed the action of the trial court in granting a new trial because of error in permit-

ting counsel to ask the following question: "Mr. Cleary: * * * would any of you have any hesitancy in holding my client blameless, finding in his favor, if you felt that he was not responsible for this accident?"

In our consideration of the question presented we should bear in mind the following rules: " 'The extent to which parties should be allowed to go in examining jurors as to their qualifications cannot well be governed by any fixed rules. The examination is conducted under the supervision and direction of the trial court, and the nature and extent of the examination and what questions may or may not be answered must necessarily be left largely to the sound discretion of the court, the exercise of which will not be interfered with unless clearly abused.' " State v. Hoffman, 344 Mo. 94, 125 S.W.2d 55, 57.

We think the question in the case at bar may readily be distinguished from the question in the Pinkston, Katz, and Smith cases. This for the reason that the question in those cases definitely sought to commit the jurors to a certain verdict in the event of certain contingencies while the one before us did not. The question before us concluded with " * * * are there any of you who couldn't give a verdict for defendant." If the question had contained the word "wouldn't" it would have been a definite commitment and would likely have been reversible error. However, there is a decided difference between those words. Here the prospective jurors, by their silence, indicated that they *could* render a verdict for defendant if the law and evidence showed that plaintiff was not entitled to recover. But that was not to say that they *would* render such a verdict. Apparently defendant, in asking the question, was endeavoring to ascertain whether there were any prospective jurors who had views which would preclude them from returning a defendant's verdict, in a case of this nature, in any event.

We do not approve of the practice of asking veniremen questions such as the one before us because it does, in a sense, involve speculation as to the future action of the jurors in the event of certain contingencies. However, in this case we are unable to conclude that any prejudice to plaintiff resulted therefrom and we accordingly rule that the trial court did not abuse its discretion in overruling the objection.

Plaintiff's next point is that the court erred in overruling an objection to the following portion of the argument of defendant's counsel: " * * * You have seen this man's temper up, seen him smirking over here, seen him looking around with his shifty eyes * * *. Mr. Byrne: I think that is ridiculous. I am going to object to that. I think that is improper argument. The Court: Overruled."

The statement complained of was made while counsel was arguing that plaintiff was guilty of contributory negligence. It was made in connection with the argument that plaintiff was careless because he was "mad" over the fact that the oil had been spilled. The entire statement appears to refer to plaintiff's conduct in the courtroom during the trial. Plaintiff says that the statement was calculated to prejudice the jury against him and that it had that result.

We have often said that argument should not be outside the evidence nor calculated to arouse a feeling of hostility or resentment against the opposite party. Also, no derogatory or irrelevant reference to the appearance of a party should be permitted. See cases cited in Hancock v. Crouch, Mo.App., 267 S.W.2d 36. There is no evidence in the transcript to prove that plaintiff conducted himself in the manner stated. However, the fact that the trial judge overruled the objection may be an indication that he had observed conduct on the part of plaintiff of the type mentioned in the argument. In any event, we think it was improper to permit a reference to plaintiff as having "shifty eyes." That

expression has an unsavory connotation and could be construed as indicating that plaintiff had an unstable, furtive appearance.

■ However, it does not follow as a matter of course that there should be a reversal of the judgment. "The trial judge has a large discretion 'in permitting or restraining the argument, and his rulings will generally be deferred to on appeal.' Goyette v. St. Louis-San Francisco R. Co. (Mo.Sup.) 37 S.W.(2d) 552, 556. On the motion for a new trial, the trial judge determined that the argument complained of did not improperly influence the jury. The trial judge hears the testimony and the arguments, and in view of his opportunity to weigh and determine the likely or possible effect of the alleged prejudicial argument, we are inclined to defer to his rulings unless it appears that the protested arguments so patently pass legitimate bounds as to be manifestly prejudicial and the ruling of the trial court thereon a clear abuse of discretion." Cordray v. City of Brookfield, 334 Mo. 249, 88 S.W.2d 161, 165. In the instant case the point under consideration was called to the attention of the trial judge in the motion for new trial and the motion was overruled. Since the statement complained of did not "patently pass legitimate bounds," and we see nothing in the transcript to indicate prejudice, we defer to the opinion of the trial judge and accordingly rule that the argument under consideration was not such as would require the granting of a new trial.

. ■ Two other contentions of error relating to defendant's argument are briefed by plaintiff. One concerns an argument in regard to the number of damage suits for personal injuries that had been filed by plaintiff. However, plaintiff did not make any objection to that argument and we accordingly rule that the alleged error is not preserved for appellate review. O'Brien v. City of St. Louis, Mo.Sup., 355 S.W.2d 904 [5]. The other contention relates to an argument which plaintiff says "was improper and prejudicial in that it told the jury that the plaintiff and his attorney had conspired to commit perjury in order to defeat the possible claim of contributory negligence." The objection made to that argument, however, was as follows: "Mr. Byrne: That is improper argument, Your Honor. That presumes something not in evidence, that there was a slick linoleum. The Court: Well, I will overrule the objection." It will be noted that the ground of objection stated in the trial court is entirely different from the objection presented here. As we view this situation, there is nothing before us for review. The ground of objection actually stated in the trial court has not been asserted on appeal and hence is considered abandoned. Marshall v. City of Gladstone, Mo.Sup., 380 S.W.2d 312. And the ground of objection presented here, not having been asserted in the trial court, may not be considered by this court. "Since an appellate court is not a forum in which to make a new case, or in which new points will be considered, but is merely a court of review to determine whether or not the rulings of the trial court, as there presented, were correct, a party seeking the correction of error must stand or fall on the case which was made in the trial court, and thus it follows that only those objections or grounds of objection which were urged in the trial court, without change and without addition, will be considered on appeal." 4 C.J.S. Appeal & Error § 253, p. 770. This point is therefore ruled adversely to plaintiff.

The judgment is affirmed.

FINCH, P. J., and EAGER, J., concur.

DONNELLY, J., not sitting.